30 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Behrooz Nikkhou MOFRAD, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70832.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1994.*
Decided July 29, 1994.
 
 Before: D.W. NELSON, BEEZER and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Behrooz Nikkhou Mofrad petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying his applications for discretionary relief under Sec. 212(c) of the Immigration and Naturalization Act, 8 U.S.C. Sec. 1182(c), and Sec. 208(a), 8 U.S.C. Sec. 1158(a), and for withholding of deportation under Sec. 243(h), 8 U.S.C. Sec. 1253(h). He contends that the BIA failed to adequately consider and properly weigh the evidence supporting his applications for discretionary relief. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a). Because the BIA failed to expressly state its reasoning, we remand for further proceedings as to Mofrad's application for Sec. 212(c) relief. We otherwise deny the petition.
 
 
 3
 * We review the BIA's denial of Sec. 212(c) relief for an abuse of discretion. Ayala-Chavez v. INS, 944 F.2d 638, 642 (9th Cir.1991). Our standard of review is very narrow; we will set aside the decision to deny Sec. 212(c) relief only if the BIA "fails to support its conclusions with a reasoned explanation based upon legitimate concerns." Vargas v. INS, 831 F.2d 906, 908 (9th Cir.1987). We employ essentially the same standard to review the discretionary refusal to grant asylum. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992). We ordinarily review only the BIA's decision; however, "where the BIA does not perform an independent review of the IJ's decision and instead defers to the IJ's exercise of his or her discretion, it is the IJ's decision that we review." Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir.1993).
 
 II
 
 4
 Mofrad's challenges go only to the manner in which the BIA exercised its discretion in denying both his Sec. 212(c) waiver of deportability and his Sec. 208(a) asylum applications.[1] Because his arguments raise analytically related issues that are subject to the same standard of review, we consider the denial of these applications for relief together. In both instances, Mofrad contends that the BIA inappropriately weighed the equitable factors it took into consideration.[2]
 
 
 5
 * The BIA determines whether an applicant who meets the statutory requirements for Sec. 212(c) relief also merits relief as a matter of discretion by "balanc[ing] the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." Ayala-Chavez, 944 F.2d at 641 (quoting In re Marin, 16 I & N Dec. 581, 584 (BIA 1978)). We do not assume that the BIA considered factors it did not expressly mention. Mattis v. INS, 774 F.2d 965, 967 (9th Cir.1985). The consideration of a factor in one discretionary determination, moreover, cannot be used as a basis for inferring that it adequately was considered elsewhere. Campos-Granillo v. INS, 12 F.3d 849, 853 (9th Cir.1993).
 
 
 6
 In Rashtabadi, we determined that the BIA's failure to address evidence of rehabilitation presented in support of an alien's Sec. 212(c) application constituted an abuse of discretion, as this factor was among those determined to be relevant by the agency's own precedents. slip op. 4823, 4837-38 (9th Cir. May 11, 1994). Our reasoning in Rashtabadi is fully applicable to the BIA's treatment of Mofrad's Sec. 212(c) application. There is no question that the IJ failed to consider the hardship deportation would cause Mofrad when balancing the relevant equitable and adverse factors. The hardship of deportation, like efforts at rehabilitation, is a relevant factor in determining whether an alien merits Sec. 212(c) relief. In re Marin, 16 I & N Dec. at 584-85. As such, the BIA could not properly rest on the IJ's findings and conclusions.
 
 
 7
 Although the BIA also reviewed the IJ's decision independently and ostensibly supplied this missing factor, its conclusory assertion that "even considering the likelihood of persecution in Iran in conjunction with the respondent's other unusual and outstanding equities, the adverse factors of record outweigh those equities" did not adequately explain "how [the BIA] arrived at its decision." Yepes-Prado v. INS, 10 F.3d 1363, 1370 (9th Cir.1993); see Castro-O'Ryan v. INS, 847 F.2d 1307, 1314 (9th Cir.1988) (the agency must provide basis for its decision and explain how it arrived at findings underlying its decision for proper appellate review); Cerillo-Perez v. INS, 809 F.2d 1419, 1422 (9th Cir.1987) (the agency must state reasons and show proper consideration of all factors); Dragon v. INS, 748 F.2d 1304, 1307 (9th Cir.1984) (the agency must issue a reasoned disposition reflecting consideration of all relevant factors). "Agencies abuse their discretion no less by arriving at a plausible decision in an arbitrary fashion than by reaching unreasonable results." Yepes-Prado v. INS, 10 F.3d at 1370.
 
 B
 
 8
 We reject Mofrad's argument that the BIA's denial of Sec. 208(a) relief suffered from the same infirmity. The BIA must take into account and "carefully evaluate [negative factors] in light of the unusually harsh consequences which may befall an alien who has established a well-founded fear of persecution" when exercising its discretion under Sec. 208(a). In re Pula, 19 I & N Dec. 467, 474 (BIA 1987). Through its adoption of the IJ's reasoning, the BIA took into account the fact that Mofrad may suffer "unusually harsh consequences" in the event he is deported to Iran, as well as the other favorable factors Mofrad presented, including his work history, efforts at rehabilitation, expression of remorse for his crime, and length of residence and family ties in the United States. Upon balancing these favorable equities against the serious nature of Mofrad's criminal conviction, however, the Board concluded that he did not merit discretionary relief. The BIA did not abuse its discretion in reaching this decision.
 
 III
 
 9
 We REMAND the matter to the BIA for a reasoned explanation of its discretionary denial of Mofrad's Sec. 212(c) application consistent with this disposition.
 
 
 10
 PETITION GRANTED IN PART AND DENIED IN PART.
 
 BEEZER, Circuit Judge:
 
 11
 I concur in the judgment as to Mofrad's Sec. 212(c) application; I otherwise dissent.
 
 
 12
 Although I agree that the agency's analysis of the asylum application presents a closer question than does its treatment of the waiver of deportability application, I believe that the IJ's analysis, which the BIA wholly adopted, fell short of the standard in In re Pula, 19 I & N Dec. 467, 473-74 (BIA 1987), and of our prior decisions relating to reasoned decision-making.
 
 
 13
 The IJ's finding concerning a specific threat to Mofrad's life was phrased in the past tense. The finding logically referred only to Mofrad's testimony concerning past detention and torture. The specific contention that Mofrad might be put to death upon his deportation to Iran was not addressed by the IJ, unless, of course, we assume, contrary to Mattis v. INS, 774 F.2d 965, 967 (9th Cir.1985), that this factor was fully considered when the IJ referred vaguely to a "future threat of harm" and to the "consequences of deportation" when balancing the factors pertinent to Mofrad's Sec. 208(a) application. I do not believe this constitutes deliberate consideration any more than does the BIA's generalized reference to the "likelihood of persecution" in context of Mofrad's Sec. 212(c) application. In my view, both responses suffer from the same fundamental infirmity.
 
 
 14
 Although the agency did not entirely ignore the relevant factors when denying Mofrad discretionary relief, the standard for reasoned decision-making implicit in our decisions requires that the agency do more than conclusorily address the relevant factors; we require that the agency give these factors deliberate consideration. See, e.g., Castro-O'Ryan v. INS, 847 F.2d 1307, 1314 (9th Cir.1988) (the agency must provide basis for its decision and explain how it arrived at findings underlying its decision for proper appellate review); Cerillo-Perez v. INS, 809 F.2d 1419, 1422 (9th Cir.1987) (the agency must state reasons and show proper consideration of all factors). These cases underscore the principle that "[a]gencies abuse their discretion no less by arriving at a plausible decision in an arbitrary fashion than by reaching unreasonable results." Yepes-Prado v. INS, 10 F.3d 1363, 1370 (9th Cir.1993). At a minimum, deliberate consideration requires that the agency respond to the particular facts brought to its attention on an applicant's behalf. Cf. Mattis, 774 F.2d at 967 ("[c]ursory, summary or conclusory statements are inadequate"); De La Luz v. INS, 713 F.2d 545, 545 (9th Cir.1983) (agencies abuse their discretion when they distort an important aspect of an alien's claim). Here, Mofrad presented specific and, as we must presume,[1] credible testimony that he would be imprisoned and likely put to death upon his return to Iran. Dismissing his concrete fear of execution as an equitable factor with the conclusory assertions that the agency has taken the "likelihood of persecution" or the "consequences of deportation" into account is simply not sufficient.[2]
 
 
 15
 The term "persecution" encompasses many forms and degrees of physical, social or psychological harm. The phrase "likelihood of persecution" moreover, conveys only that it is more likely than not that Mofrad will face some form of persecution, in keeping with the finding that he has established a clear probability of persecution; the phrase does not convey that the BIA undertook any assessment of the possibility that, in Mofrad's case, "persecution" may, in fact, mean "execution." The IJ's references to a "future threat of harm" and to the "consequences of deportation" in context of Mofrad's Sec. 208(a) asylum application suffer from the same infirmity. Although finding that Mofrad's life had been threatened in the past in Iran, the IJ, by using only these generic phrases when balancing the various favorable and adverse factors, did not convey that she specifically considered "execution" as among the "consequences" or the "threat of harm" awaiting Mofrad upon deportation.
 
 
 16
 Generalizations of the type employed here have too often served to obscure the consequences of official action. See George Orwell, Politics and the English Language, in Sonia Orwell and Ian Angus, eds., 4 The Collected Essays, Journalism and Lectures of George Orwell 127, 136-37 (Harcourt, Brace & World, 1968). The urge to mask particularly ugly consequences behind a veil of generalization seems especially inappropriate when we consider the genesis of modern refugee law and the centrality of the principle that the state not return refugees to their persecutors--nonrefoulement--to that body of law. See e.g., David A. Martin, The New Asylum Seekers, in The New Asylum Seekers: Refugee Law in the 1980s 1 (D. Martin ed. 1988) (tracing history of refugee protection from WWII to present). Under extreme circumstances, this practice may even subject the agency to the charge that it abused its discretion by distorting or disregarding important aspects of an alien's claim. See De La Luz, 713 F.2d at 545. Although I would not conclude that it distorted Mofrad's claim within the meaning of De La Luz, the agency's conclusory statements can, with justice, be characterized as an attempt to evade its duty to give deliberate consideration to the actual consequences of its exercise of discretion.
 
 
 17
 My concern goes beyond mere appearances, however. The BIA's own precedent requires that "unusually harsh" consequences attending an alien's deportation receive specific consideration when raised in Sec. 208(a) applications for discretionary relief. See In re Pula, 19 I & N Dec. at 474. The logic of In re Pula is equally applicable to the consideration of hardship as a factor in the Sec. 212(c) context. When credible evidence is introduced into the record indicating that the hardship or persecution awaiting a deportee is likely to be unusually harsh, reasoned decision-making in context of an alien's request for discretionary relief under both Sec. 212(c) and Sec. 208(a) requires that the agency give explicit and deliberate consideration to the specific nature of the hardship or persecution awaiting the deportee. This is by no means an onerous burden. A penetrating inquiry would not be necessary if the agency determines, based on the alien's lack of credibility or on other relevant factors, that a claim of exceptionally severe hardship or unusually harsh consequences is frivolous or that exceptionally severe hardship or persecution is otherwise unlikely.
 
 
 18
 Absent such analysis, I cannot conclude that the BIA has "heard, considered, and decided" the matter in satisfaction of its statutory duty. Villanueva-Franco v. INS, 802 F.2d 327, 330 (9th Cir.1986). From the record before us, I cannot determine whether the BIA, either through its independent review of Mofrad's Sec. 212(c) application or through its adoption of the IJ's reasoning as to both his Sec. 212(c) and Sec. 208(a) applications, specifically considered and weighed the uncontested contention that Mofrad would "most likely end up with execution." Even if I assumed, contrary to Mattis, that the agency gave deliberate consideration to the specific possibility of execution, I could not determine from this record whether its decision derived from its assessment that Mofrad is not at serious risk of execution, that even a substantial risk of execution is outweighed by the seriousness of his crime, or that the gravity of the crime requires deportation to Iran even if it is certain that Mofrad will be taken from the Tehran airport terminal to a place of detention, and shortly thereafter, he will probably be executed.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The IJ determined that the seriousness of his crime rendered Mofrad statutorily ineligible for withholding of deportation. Mofrad does not challenge this conclusion in his petition for review
 
 
 [2]
 It is unclear whether Mofrad also means to argue that the BIA's failure to review de novo the IJ's decision constituted error. To the extent that he takes this position, his argument is without merit. Even if it rested on a sound factual predicate, Mofrad's argument is essentially a red herring. If the BIA had, in fact, failed to exercise its "power to review the record de novo and make its own findings of fact," Cardoza-Fonseca v. INS, 767 F.2d 1448, 1455 (9th Cir.1985), aff'd, INS v. Cardoza-Fonseca, 480 U.S. 421 (1987), the BIA's deference to the IJ's findings or conclusions merely shifts the focus of our review to the IJ's decision; it does not constitute error. See Campos-Granillo, 12 F.3d at 852
 Mofrad's argument does, however, rest on an infirm factual predicate. Our review of the record reveals that the BIA conducted at least a partial independent review of the record before it. Despite otherwise adopting the IJ's conclusions and findings, the BIA conducted its own review to determine that the hardship of deportation, in combination with the other equitable factors, did not alter the IJ's conclusion as to Sec. 212(c) relief.
 
 
 [1]
 When the BIA is silent as to credibility but otherwise explains the rationale behind its decision, we presume that the BIA found the petitioner credible. Damaize-Job v. INS, 787 F.2d 1332, 1338 (9th Cir.1986)
 
 
 [2]
 I do not purport to add a new factor to those the BIA has determined are relevant to the exercise of its discretion in context of Sec. 212(c) and Sec. 208(a) applications. "Death is a hardship." Bastanipour v. INS, 980 F.2d 1129, 1134 (7th Cir.1992). I would conclude only that reasoned decision-making under these circumstances requires explicit consideration of the specific facts presented on Mofrad's behalf