159 F.3d 429
 98 Cal. Daily Op. Serv. 7998, 98 Daily Journal
D.A.R. 11,121
Remedios Canlas ARROZAL, a.k.a., Remedios Arrozal Yehdego, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 97-70068.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 6, 1998.
Decided Oct. 27, 1998.
 
 Carol L. Edward, Seattle, WA, for petitioner.
 Karen A. Hunold, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent.
 On Petition for Review of an Order of the Board of Immigration Appeals. I & NS No. Ahp-kly-vjo.
 Before: SCHROEDER, PREGERSON, and BRUNETTI,* Circuit Judges.
 PREGERSON, Circuit Judge.
 
 
 1
 Remedios Arrozal Yehdego, a native of the Philippines, petitions for review of a Board of Immigration Appeals ("BIA") order denying her motion to reopen her deportation hearing. She seeks a reopening so that she can request suspension of deportation under § 244 of the Immigration and Naturalization Act ("INA"). Yehdego's request for relief from deportation is based in part on the hardship that her deportation would cause her American citizen husband and American-born children. Yehdego presented evidence that her husband, Emanuel Yehdego, who is originally from Eritrea, would have to stay in the United States because language and cultural barriers would prevent him from supporting their family in the Philippines. Yehdego's three U.S. citizen children, Kudus (eleven years old), Gabriel (seven years old), and Angelica (two years old), would suffer because they would be separated from one parent whether they stayed in this country or moved to the Philippines. Additionally, Kudus and Gabriel attend school in this country and are imbued with our American culture. Kudus and Gabriel are also asthmatic. According to their doctor, they would suffer from more frequent asthma attacks and probably develop a more chronic form of asthma if they moved to the Philippines.
 
 DISCUSSION
 
 2
 The Immigration and Naturalization Service ("INS") argues that (1) we do not have jurisdiction to hear Yehdego's petition, (2) even if we have jurisdiction, we should dismiss this petition because Yehdego failed to report for deportation in 1990, and (3) in any event, the BIA did not abuse its discretion in denying Yehdego's motion to reopen. We deal with each of these arguments in turn.
 
 
 3
 I. Jurisdiction.
 
 
 4
 Both parties agree that Yehdego's petition falls under the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, 110 Stat. 3009, as amended by Pub.L. No. 104-302, 110 Stat. 3656 (1996) ("IIRIRA").
 
 
 5
 Under the IIRIRA's transitional rules, unless an exception applies, this court has jurisdiction to hear Yehdego's appeal from the BIA's denial of her motion to reopen. See IIRIRA § 309(c)(1). The INS argues that an exception does apply. Specifically, the INS invokes § 309(c)(4)(E) of the IIRIRA, which precludes an appeal of "any discretionary decision under section ... 244."[1] The INS contends that under Sarmadi v. INS, 121 F.3d 1319 (9th Cir.1997), we should treat the denial of Yehdego's motion to reopen as a discretionary decision under § 244 because she intends to request suspension of deportation under that section.
 
 
 6
 But the petitioner in Sarmadi also intended to request suspension of deportation under § 244 and yet we did not treat his motion to reopen as a discretionary decision under § 244. See id. at 1320, 1322. Sarmadi, therefore, does not support treating the BIA's denial of Yehdego's motion to reopen as a decision under § 244.
 
 
 7
 To the contrary, Sarmadi supports a finding that the transitional rules do not deny this court jurisdiction over motions to reopen. In Sarmadi, we considered whether the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") prohibits judicial review of an order denying a motion to reopen. Sarmadi, 121 F.3d at 1320-21. The AEDPA precludes review of any "final order of deportation against an alien who is deportable by reason of having committed ... any offense covered by [§ 237(a)(2)(A)(ii) of the INA]." Id. at 1321, n. 1. Section 237(a)(2)(A)(ii) of the INA makes any alien who "is convicted of two or more crimes involving moral turpitude ... deportable." See 8 U.S.C. § 1227 (codifying INA § 237). The BIA ordered Sarmadi deported because he had been convicted of two crimes involving moral turpitude. Sarmadi, 121 F.3d at 1320. Sarmadi then moved to reopen his immigration hearing so that he could request suspension of deportation under § 244. Id.
 
 
 8
 In considering Sarmadi's motion to reopen, we pointed out that the motion to reopen was intertwined with the deportation order. Id. at 1322. Because the deportation order was issued under the moral turpitude section, § 237(a)(2)(A)(ii) of the INA, we concluded that the order denying Sarmadi's motion to reopen also should be treated as an order under that moral turpitude section. See id. Thus, we concluded that the AEDPA's limitation against reviewing any final order under the moral turpitude section precluded review of the order denying Sarmadi's motion to reopen. Id. at 1321.
 
 
 9
 In this case, Yehdego's deportation order was issued under § 241(a)(2) of the INA for overstaying her visa. Following the rationale of Sarmadi, the BIA's order denying Yehdego's motion to reopen should be treated as an order under § 241(a)(2), the overstay section of the INA. But § 241 is not one of the INA sections listed in § 309(c)(4)(E) of the IIRIRA, the section that precludes an appeal from certain discretionary decisions.
 
 
 10
 Hence, this court has jurisdiction under the IIRIRA's transitional rules to hear Yehdego's appeal from the BIA's denial of her motion to reopen.
 
 
 11
 II. Dismissal for Failing to Report for Deportation.
 
 
 12
 The INS next argues that even if we have jurisdiction, we should dismiss Yehdego's petition under Hussein v. INS, 817 F.2d 63 (9th Cir.1986) because she failed to report for deportation in 1990. In Hussein, we dismissed a petition for review of a BIA order because the petitioner had escaped from federal custody. Id. Yehdego's conduct, however, markedly differs from the egregious conduct that led to the dismissal of the appeal in Hussein. Unlike the petitioner in Hussein, Yehdego is not a fugitive from justice seeking relief in absentia. See Katz v. United States, 920 F.2d 610, 612 (9th Cir.1990) (refusing to dismiss appeal because at the time Katz appealed, he was no longer a fugitive from justice) abrogated on other grounds by Lozada v. Deeds, 964 F.2d 956, 956-57 (9th Cir.1992). Thus, unlike the petitioner in Hussein, Yehdego "remains subject to [this court's] jurisdiction and its mandate no matter the result." Id.
 
 
 13
 III. BIA's Denial of Yehdego's Motion to Reopen.
 
 
 14
 This court reviews for abuse of discretion the BIA's denial of a motion to reopen. Watkins v. INS, 63 F.3d 844, 847 (9th Cir.1995). The BIA abuses its discretion when it "fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief." Id. at 849 (emphasis added) (quoting Yepes-Prado v. INS, 10 F.3d 1363, 1366 (9th Cir.1993)). "The BIA ... decides whether an applicant is entitled to a favorable exercise of agency discretion on a case by case basis by 'taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident.' " Rashtabadi v. INS, 23 F.3d 1562, 1570 (9th Cir.1994) (emphasis added) (quoting Yepes-Prado, 10 F.3d at 1365-66). In its determination, the BIA must take into account all relevant factors. Gutierrez-Centeno v. INS, 99 F.3d 1529, 1533 (9th Cir.1996). And in balancing the factors, the BIA must "weigh both favorable and unfavorable factors by evaluating all of them, assigning weight or importance to each one separately and then to all of them cumulatively." Campos-Granillo v. INS, 12 F.3d 849, 852 (9th Cir.1993) (internal quotations omitted). Moreover, the BIA must indicate how it weighed these factors and indicate with specificity that it heard and considered petitioner's claims. Id. A conclusory statement by the BIA concerning favorable factors is insufficient. Id.; Yepes-Prado, 10 F.3d at 1370; Jara-Navarrete v. INS, 813 F.2d 1340, 1342 (9th Cir.1986).
 
 A.
 
 15
 Yehdego contends that the BIA abused its discretion by failing to consider all the factors in her favor. We agree.
 
 
 16
 Yehdego presented evidence about her community involvement, her marriage to a United States citizen, the hardship that her deportation would cause her citizen children's health and well-being, and information concerning the human rights record of the Philippines. All these factors must be considered by the BIA in exercising its discretionary powers. See Villena v. INS, 622 F.2d 1352, 1357-60 (9th Cir.1980); Tukhowinich v. INS, 64 F.3d 460, 463-64 (9th Cir.1995).
 
 
 17
 The BIA, however, brushed aside the factors in Yehdego's favor merely by stating that it "recognize[d] the respondent's significant equities, particularly those related to her United States citizen children who are in no way responsible for their parent's past conduct." This cursory and generalized analysis of Yehdego's favorable factors does not suffice. See Jara-Navarrete, 813 F.2d at 1342 (holding that the BIA's superficial mentioning of petitioner's favorable factors was an abuse of discretion).
 
 
 18
 Such a cursory review of Yehdego's claim is especially inappropriate when considering the adverse effect that Yehdego's deportation would have on Kudus, Gabriel, and Angelica, her American-born children. The BIA must give careful and individualized consideration to the hardship that United States citizen children would suffer as a result of the deportation of a parent. See Jara-Navarrete, 813 F.2d at 1342-43. Moreover, the BIA cannot simply discount a citizen child's medical problems. Watkins, 63 F.3d at 849; Jara-Navarrete, 813 F.2d at 1343. Nor can the BIA simply assume that the affected children will have no problem adjusting to life in their parent's native country. Watkins, 63 F.3d at 849; Jara-Navarrete, 813 F.2d at 1342-43.
 
 B.
 
 19
 Nevertheless, the INS argues that the BIA did not abuse its discretion because Yehdego flouted the immigration laws when she failed to report for deportation. We disagree.
 
 
 20
 In In re Barocio, 19 I. & N. Dec. 255, 257, 1985 WL 56044 (1985), the BIA announced a policy that a failure to surrender for deportation is a "very serious adverse factor" to be considered in deciding whether to reopen deportation proceedings. Because the Barocios had refused to report for deportation, the BIA denied their motion to reopen after stating that it had "considered the substantial equities that are present in this case." Id. at 258, 1985 WL 56044. The BIA based its denial of Yehdego's motion to reopen on Barocio.
 
 
 21
 But Barocio does not establish "a per se rule eliminating the BIA's discretion ever to consider reopening in a situation in which an alien has failed to comply with an immigration order." Sequeira-Solano v. INS, 104 F.3d 278, 279 (9th Cir.1997). Furthermore, in Yepes-Prado, we stated that the BIA must weigh favorable factors against unfavorable factors. Yepes-Prado, 10 F.3d at 1366. One of these unfavorable factors is a petitioner's "additional violations of the immigration laws," id., which would include a failure to report for deportation. Hence, the BIA cannot just waive aside Yehdego's favorable factors merely because she failed to report for deportation in 1990.
 
 
 22
 Nor does Sequeira-Solano mandate that we affirm the BIA's decision. There we held that the BIA did not abuse its discretion in denying a motion to reopen deportation proceedings "where the record indicate[d] that only by disobeying the order to report for deportation was the petitioner able to establish his prima facie eligibility for suspension." Sequeira-Solano, 104 F.3d at 279. But in so holding, we did not mean to imply that the BIA simply could close its eyes to favorable factors that could support a motion to reopen. In fact, we explicitly noted that there is no "per se rule eliminating the BIA's discretion ever to consider reopening in a situation in which an alien has failed to comply with an immigration order." Id. Moreover, the BIA in Sequeira-Solano considered all of the relevant circumstances in the case. Id. But, as explained above, the BIA in this case did not consider all the relevant circumstance-particularly the factors in Yehdego's favor.
 
 C.
 
 23
 Finally, the dissent reasons that, because IIRIRA renders Yehdego statutorily ineligible for suspension of deportation, the BIA did not need to consider all the factors in Yehdego's favor. We disagree.
 
 
 24
 The BIA declined to address IIRIRA's applicability to Yehdego. We suggest that Yehdego's statutory eligibility for suspension of deportation was not affected by IIRIRA because the relevant provisions of IIRIRA were not effective until April 1, 1997, three months after the BIA denied her motion to reopen.
 
 
 25
 Under the pre-IIRIRA test for continuous physical presence, a petitioner needed to accrue seven years of continuous physical presence in the United States before filing an application for suspension of deportation. See INA § 244(a)(1), 8 U.S.C. 1254(a)(1)(now repealed). But under IIRIRA's new test, "any period of ... continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear" or an order to show cause why he or she should not be deported. INA § 240A(d)(1) & IIRIRA § 309(c)(5), amended by Nicaraguan Adjustment and Central American Relief Act ("NACARA") § 203(a)(1). Thus, while the BIA might conclude on remand that Yehdego does not satisfy IIRIRA's new test for continuous physical presence,[2] she did satisfy the test that was in effect when the BIA denied her motion to reopen.
 
 
 26
 Section 240A of the INA has an effective date of April 1, 1997. See Astrero v. Immigration and Naturalization Service, 104 F.3d 264, 266 (9th Cir.1996). Therefore, it does not apply to Yehdego, who obtained a final administrative decision before April 1, 1997.[3] See Matter of U M-, 20 I & N Dec. 327, 333, 1991 WL 353519 (BIA 1991), aff'd, 989 F.2d 1085 (9th Cir.1993) (holding that the law to be applied by the BIA is that existing at the time the final administrative decision is made); cf. Kalaw v. INS, 133 F.3d 1147 (9th Cir.1997) (accepting the applicability of the old INA § 244(a)(1) to BIA decisions denying suspension of deportation issued on January 15, 1997 and March 6, 1997). Section 309(c)(1) of IIRIRA explicitly provides that IIRIRA's new rules do not apply to aliens, such as Yehdego, who were in proceedings before April 1, 1997. Section 309(c), subparagraphs (2) through (5) list several exceptions to this general rule. The dissent observes that § 309(c)(5), as amended by NACARA § 203(a)(1), provides that orders to show cause issued before IIRIRA's effective date operate to stop the clock on the alien's accrual of time. But the dissent also correctly notes that this new rule only applies to those aliens whose deportation proceedings were pending on the IIRIRA's effective date-April 1, 1997. Since Yehdego's deportation proceedings were not pending on April 1, 1997, IIRIRA did not apply.
 
 
 27
 Accordingly, IIRIRA's new test for continuous physical presence could not have provided the basis for the BIA's denial of Yehdego's motion to reopen.
 
 CONCLUSION
 
 28
 Under the IIRIRA's transitional rules, Congress banned a limited and specific set of discretionary decisions. Because motions to reopen were not included within that set, Congress' ban does not preclude our review of the BIA's denial of a motion to reopen. We therefore hold that we have jurisdiction to review the BIA's denial of Yehdego's motion to reopen.
 
 
 29
 We also hold that the BIA abused its discretion in considering Yehdego's motion to reopen by failing to consider all her favorable factors and by not weighing those favorable factors against the negative factors that the BIA thoroughly discussed. We therefore grant Yehdego's petition, REVERSE the BIA's denial of petitioner's motion to reopen and REMAND to the BIA for further proceedings consistent with this opinion.
 
 
 30
 REVERSED and REMANDED.
 
 
 31
 BRUNETTI, Circuit Judge, dissenting.
 
 
 32
 Because the majority's opinion is neither consistent with the sound policies of this country's immigration laws nor in accord with recent acts of Congress, I respectfully dissent.
 
 
 33
 The BIA denied Yehdego's motion to reopen "as a matter of discretion without further addressing her statutory eligibility for suspension of deportation." The BIA stated that "under the circumstances of this case ..., we do not find [Yehdego] has met her burden of demonstrating that she warrants a favorable exercise of discretion under our decision in Matter of Barocio. ..."
 
 
 34
 The "circumstances of this case" are as follows: Yehdego married Emanuel Tesfai Yehdego ("Mr.Yehdego") in Saudi Arabia in 1983. She then entered the United States on January 22, 1985, with permission to stay until July 21, 1985. Yehdego, however, did not leave the United States when her visa expired in July of 1985. Her marriage to Mr. Yehdego ended on July 11, 1985. Less than seven months later, on January 27, 1986, Yehdego married Anthony Burtis ("Burtis"), a United States citizen. Because Yehdego had remained illegally in the United States beyond July 21, 1985, the INS issued Yehdego an Order to Show Cause on April 30, 1986. After a hearing on May 8, 1986, an Immigration Judge found that Yehdego "entered into an arrangement to marry a citizen of the United States [Burtis] so that she could obtain permanent status in the United States and that pursuant to this agreement money was paid to the husband." In fact, Burtis was paid by Yehdego's first husband to marry Yehdego in order to assist her in obtaining immigration papers. Moreover, the evidence demonstrates that Yehdego continued her relationship with her first husband and that she never even lived with Burtis. Accordingly, the judge denied Yehdego's application for adjustment of status and voluntary departure, and ordered that she be deported to the Philippines. Yehdego appealed the judge's order to the BIA.
 
 
 35
 On October 24, 1990, the BIA dismissed her appeal. It held that she did not have an approved visa petition at the time of her hearing and was therefore statutorily ineligible for adjustment of status. The BIA also held that Yehdego had not demonstrated her eligibility for voluntary departure and was therefore statutorily ineligible for relief. The BIA further held that her fraudulent marriage and lack of countervailing equities did not merit a discretionary grant of voluntary departure. Yehdego did not file a petition for review with this court after the BIA dismissed her appeal on October 24, 1990.
 
 
 36
 On November 13, 1990, Yehdego was sent a warrant that ordered her to report for deportation on November 28, 1990. Yehdego, however, failed to appear for deportation as ordered. In her motion to reopen, Yehdego claimed that the warrant was sent to her old address. She had not, however, given the Service her new address as required by law.[1] On February 15, 1996, more than five years after Yehdego was to report for deportation, the INS caught Yehdego and took her into custody. Yehdego then and only then filed her motion to reopen on March 20, 1996, so that she could apply for suspension of deportation based upon the hardship her deportation would cause to her naturalized United States citizen husband, Emanuel, and to their three United States citizen children, Kudus born in November, 1986, Gabriel born in August, 1990, and Angelica born in January, 1996. The BIA denied her motion to reopen on December 30, 1996. Yehdego's petition for review is now before this court more than thirteen years after she was initially required to leave the United States.[2]
 
 
 37
 Yehdego filed her motion to reopen so she could eventually seek a suspension of deportation.
 
 
 38
 The grounds for granting suspension of deportation are: The alien has been physically present in the United States for at least seven years; is of good moral character; and his deportation would result in extreme hardship to the alien, or to a spouse, parent or child who is a U.S. citizen or lawful permanent resident.
 
 
 39
 Urbina-Osejo v. INS, 124 F.3d 1314, 1318 (9th Cir.1997). Yehdego is statutorily ineligible for suspension of deportation because she cannot satisfy the seven year continuous physical presence requirement. This is because Yehdego only accrued seven years of continuous physical presence by ignoring her deportation order, by disregarding the laws of this country, and by hiding from INS officials. Therefore, the BIA did not abuse its discretion when it denied Yehdego's motion to reopen because granting Yehdego's motion to reopen would have been futile and would have encouraged other illegal aliens in Yehdego's position to ignore the immigration laws of this country.
 
 
 40
 The United States Supreme Court's decision in INS v. Rios-Pineda, 471 U.S. 444, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), which the majority fails to mention, reinforces the conclusions that Yehdego cannot satisfy the seven year continuous physical presence requirement and that the BIA did not abuse its discretion in denying Yehdego's motion to reopen. In Rios-Pineda, the BIA denied a husband and wife's motion to reopen because the seven year continuous physical presence requirement and the hardships resulting from having two American born children existed only because the husband and wife delayed their departure by filing frivolous appeals. Id. at 448, 105 S.Ct. 2098. Moreover, the BIA concluded that the husband and wife's blatant disregard of the immigration laws precluded the couple from receiving a favorable exercise of discretion. Id. The Eighth Circuit reversed the BIA and ordered the BIA to reopen the proceeding. Id. The Eighth Circuit concluded that the husband and wife had established a prima facie case of hardship and that the factors relied on by the BIA did not justify its refusal to reopen the husband and wife's case. Id.
 
 
 41
 The United States Supreme Court reversed the Eighth Circuit concluding that the BIA did not abuse its discretion when it denied the husband and wife's motion to reopen. The Court reasoned that although the husband and wife had accrued seven years of continuous physical presence in the United States when they filed their motion to reopen, the couple had not accrued seven years of continuous physical presence when they were first denied a suspension of deportation. Id. at 449-50, 105 S.Ct. 2098. The Court stated:
 
 
 42
 The Attorney General can, in exercising his discretion, legitimately avoid creating further incentive for stalling by refusing to reopen suspension proceedings for those who became eligible for such suspension only because of the passage of time while their meritless appeals dragged on.... In administering this country's immigration laws, the Attorney General and the INS confront an onerous task even without the addition of judicially augmented incentives to take meritless appeals, engage in repeated violations, and undertake other conduct solely to drag out the deportation process.
 
 
 43
 Id. at 450-51, 105 S.Ct. 2098 (emphasis added). The Court also concluded that the BIA, in its discretion, properly considered the husband and wife's blatant disregard of the immigration laws when it denied the couple's motion to reopen. Id. at 451, 105 S.Ct. 2098. Therefore, the Court held that the BIA did not abuse its discretion when it denied the husband and wife's motion to reopen.
 
 
 44
 Like the husband and wife in Rios-Pineda, Yehdego cannot satisfy the seven years continuous physical presence requirement. If, as the Supreme Court has concluded, the seven year continuous physical presence requirement does not accrue during the pendency of meritless appeals, then necessarily the seven year continuous physical presence requirement does not accrue when an illegal alien blatantly ignores a deportation order and hides from INS officials. To reach any other conclusion would require one to ignore the Supreme Court's reasoning in Rios-Pineda.
 
 
 45
 The Supreme Court decision in Rios-Pineda was based on the rationale that if the seven year continuous physical presence requirement accrued during the pendency of meritless appeals then the law would encourage illegal aliens to file meritless appeal after meritless appeal for the sole purpose of accruing the required seven years of continuous physical presence. Id. at 450-51, 105 S.Ct. 2098. Therefore, in order to prevent meritless appeals and to promote the orderly administration of this country's immigration laws, the Supreme Court held that the BIA did not abuse its discretion when it concluded that the seven years of continuous physical presence does not accrue during the pendency of a meritless appeal. Id. at 451, 105 S.Ct. 2098. Following the Supreme Court's reasoning in Rios-Pineda, the accrual of the seven years of continuous physical presence requirement should cease once a deportation order or order to show cause is issued by the INS so that illegal aliens are not encouraged to ignore legal orders or hide from INS officials. Moreover, tolling the accrual of time for the required seven years of continuous physical presence will promote the orderly administration of this country's immigration laws by encouraging voluntary compliance with the law.
 
 
 46
 Accordingly, once the INS issued Yehdego the order to show cause the accrual of time Yehdego needed to satisfy the seven year continuous physical presence requirement ceased. That is, an illegal alien, like Yehdego, cannot accrue seven years of continuous physical presence by blatantly ignoring an INS order or by hiding from INS officials. We have, however, recognized that under certain circumstances time can accrue after the INS issues a deportation order or order to show cause. For example, the seven years could accrue while an illegal alien proceeds with a meritorious appeal. See Flores v. INS, 66 F.3d 1069, 1072 (9th Cir.1995)(alien can accrue time during pursuit of non-frivolous appeal if alien has not filed for suspension of deportation). However, that is not the case here. Yehdego blatantly ignored the INS's deportation order and hid from INS officials for more than five years. Therefore, Yehdego cannot satisfy the seven year continuous physical presence requirement. Because she cannot satisfy the seven years of continuous physical presence that is required for a suspension of deportation, the BIA did not abuse its discretion when it denied Yehdego's motion to reopen.
 
 
 47
 The majority has ignored the rationale of the Rios-Pineda decision and has adopted a rule of law that not only encourages illegal aliens to ignore deportation orders, but disrupts the orderly administration of the this country's immigration laws. Under the majority's decision, an illegal alien faced with a valid deportation order should ignore the order and hide from INS officials until the illegal alien has accrued seven years continuous physical presence in this country. At that point, the majority's decision permits the illegal alien to present his or her case of hardship and requires the BIA to examine those hardships despite the fact that the illegal alien has disregarded the laws of our country. The majority's rule cannot stand if we desire to facilitate voluntary compliance with our immigration laws.
 
 
 48
 Congress has, in fact, amended the immigration laws in an attempt to prevent what the majority has done in this case. Section 309(c)(5) of the IIRIRA provides: "Paragraphs (1) and (2) of Section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act." (emphasis added). Section 240A(d)(1) of the Immigration and Nationality Act in turn provides: "For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 1229(a) of this title...." 8 U.S.C. § 1229b(d)(1).
 
 
 49
 Congress resolved the ongoing dispute regarding whether the above cited statutes apply to orders to show cause (now notices to appear) issued by the INS before the IIRIRA's effective date. Section 203(1) of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") amends section 309(c)(5) of the IIRIRA to read: "paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause (including those referred to in section 242B(a)(1) of the Immigration and Nationality Act, as in effect before the title III-A effective date), issued before, on, or after the date of the enactment of this Act." (emphasis added). Therefore, under the IIRIRA and the NACARA, an alien, in order to be statutorily eligible for suspension of deportation, must accrue seven years of continuous physical presence in the United States before the INS issues an order to show cause. This is true even if the order to show cause was issued prior to the IIRIRA's effective date.[3] See NACARA § 203(1), Pub.L. No. 105-100, § 203, 111 Stat. 2196 (1997).
 
 
 50
 Yehdego entered the United States on January 22, 1985. An order to show cause was issued by the INS and served on her on April 30, 1986, roughly a year and three months after her entry. Thus, Yehdego has not even come close to acquiring the statutorily mandated amount of continuous physical presence to be eligible for suspension of deportation. Accordingly, I would hold that Yehdego is not statutorily eligible for suspension of deportation and, therefore, the BIA did not abuse its discretion when it denied her motion to reopen.
 
 
 51
 The majority argues that, because the IIRIRA became effective after the BIA denied Yehdego's motion to reopen, the IIRIRA should not be considered in this case. The recent acts of Congress that relate to or affect a pending appeal cannot be ignored and reading the IIRIRA along with the Rios-Pineda decision demonstrates why the majority's decision is flawed. Both Congress and the Supreme Court have specifically stated that illegal aliens like Yehdego should not be rewarded for ignoring our immigration laws. Yet, the majority has done just that by reversing the BIA's decision.
 
 
 52
 Finally, the majority seems to downgrade the significance of the rationale of this court's decision in Sequeira-Solano v. I.N.S. 104 F.3d 278 (9th Cir.1997). In Sequeira-Solano, the illegal alien was ordered to report for deportation and failed to appear.[4] Id. at 278. He then moved to reopen his deportation proceedings in order to seek suspension of deportation pursuant to section 244 of the INA.[5] Id. The BIA denied the motion because the petitioner had failed to appear for deportation. Id. We held that "[t]he BIA correctly found that Sequeira-Solano had put himself in defiance of our immigration laws and therefore concluded that his petition for reopening did not merit favorable consideration."[6] Id. at 279.
 
 
 53
 The alien in Sequeira-Solano also argued that his after-the-fact satisfaction of the threshold requirements for suspension of deportation required that the BIA conduct a hearing on the merits of the petition. Id. We held that the BIA did not abuse its discretion because "the record reflects that only by disobeying the order to report for deportation was the petitioner able to establish his prima facie eligibility for suspension." Id. Thus, Sequeira-Solano instructs that it is permissible for the BIA to weigh the alien's flouting of our immigration laws against him.
 
 
 54
 The majority fails to acknowledge that the circumstances that favor Yehdego exist only because Yehdego ignored the expiration of her visa in 1985 and her deportation order in 1990. Moreover, the majority fails to acknowledge the fact that Yehdego has, for thirteen years, ignored the immigration laws of this country. Yehdego has ignored an expired visa, taken employment without authorization, entered into a sham marriage, and ignored a deportation order.
 
 
 55
 Yehdego's blatant disregard of our law coupled with the fact that she can neither statutorily nor pragmatically satisfy the seven year continuous physical presence requirement mandate the conclusion that the BIA did not abuse its discretion when it denied Yehdego's motion to reopen. As the Supreme Court stated in Rios-Pineda, "[i]n this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates de novo appellate review." Id. at 452, 105 S.Ct. 2098. The majority has engaged in such review establishing a rule of law that contradicts and ignores specific acts of Congress, Supreme Court Precedent, and fundamental policies that underlie our immigration laws. Because Yehdego is not statutorily eligible for suspension of deportation and because the BIA did not abuse its discretion when it denied Yehdego's motion to reopen, I would affirm the BIA's denial of Yehdego's motion to reopen.
 
 
 
 *
 This case was argued before Schroeder and Pregerson, Circuit Judges. Hon. Floyd R. Gibson, Senior United States Circuit Judge, Eighth Circuit, sitting by designation, was originally on the panel. Judge Gibson withdrew due to illness. Judge Melvin Brunetti was substituted in for Judge Gibson. Judge Brunetti has read the briefs, reviewed the record, and listened to the oral argument tape
 
 
 [1]
 Section 309(c)(4)(E) of the IIRIRA precludes an appeal of "any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the [INA]."
 
 
 [2]
 Even under the new test, Yehdego might satisfy the continuous physical presence requirement by virtue of the fact that she has accrued twelve years of continuous physical presence since the INS issued her an order to show cause. Cf. INA § 240A(d)(1), 8 U.S.C. 1229b(d)(1)
 
 
 [3]
 The BIA denied Yehdego's motion to reopen on December 30, 1996. Denials of motions to reopen deportation proceedings are final administrative decisions. See Bolshakov v. INS, 133 F.3d 1279, 1281 (9th Cir.1998) (referring to a denial of a motion to reopen as a final administrative decision); cf. Sarmadi, 121 F.3d at 1321 (holding that the phrase "final order of deportation" in the jurisdictional provisions of the INA include a BIA denial of a motion to reopen deportation proceedings)
 
 
 [1]
 It is the alien's responsibility to notify the INS of a change of address. See Sequeira-Solano v. INS, 104 F.3d 278, 279; 8 U.S.C. § 1252b(a)(1)(F)(ii) ("[T]he alien must provide the Attorney General immediately with a written record of any change of the alien's address or telephone number.")
 
 
 [2]
 The majority finds jurisdiction to entertain Yehdego's petition for review. It is true that Yehdego's deportation order was denied under § 241(a)(2) for overstaying her visa. It is also true that § 241 is not one of the INA sections listed in § 309(c)(4)(E) of the IIRIRA, the section that precludes review of certain discretionary decisions. Thus, under Sarmadi, 121 F.3d at 1319, because our review of the underlying deportation order has not been withdrawn, arguably our review of the motion to reopen has not been withdrawn. However, Yehdego seeks a reopening, not to review the underlying deportation, but to present a case of hardship in order to suspend deportation under § 244 of the INA
 
 
 [3]
 Before Congress enacted the NACARA, it was unclear whether an order to show cause issued prior to the IIRIRA's effective date cut off an alien's accrual of time needed to satisfy the seven years continuous physical presence requirement. In Astrero v. INS, 104 F.3d 264, 266 (9th Cir.1996), we recognized without deciding that section 309(c)(5) of the IIRIRA might apply retroactively to orders to show cause issued prior to the IIRIRA's effective date. The BIA then concluded that such orders to show cause did cut off an alien's accrual of time if the suspension of deportation proceeding was pending on the IIRIRA's effective date-April 1, 1997. See In re N-J-B-, Interim Decision (BIA) 3309, 1997 WL 107593 (BIA 1997). The BIA decision in In re N-J-B-, however, was vacated by the Attorney General on July 10, 1997. Subsequent to the Attorney General's decision at least one district court concluded that section 309(c)(5) of the IIRIRA did not apply retroactively to orders to show cause. See Tefel v. Reno, 972 F.Supp. 623, 635 (S.D.Fl.1997). However, Congress clarified the issued and codified the BIA's decision in In re N-J-B- when it enacted the NACARA
 
 
 [4]
 The opinion does not state the underlying basis of the deportation order
 
 
 [5]
 The opinion also does not state when the alien moved for suspension of deportation
 
 
 [6]
 The majority attempts to distinguish Sequeira-Solano on the basis that, in that case, "[t]he BIA considered all the relevant circumstances," where, in our case, the BIA did only a cursory review of Yehdego's claim of hardship to her three American-born children if she is deported. However, as I explain above, the BIA in our case was not required to consider all of the circumstances because Yehdego is not eligible for the ultimate relief she seeks-suspension of deportation