Teodoro **RODRIGUEZ–ROMAN,**
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 01–70256.
I & NS No. A71–908–316.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2002.

Decided May 14, 2002.

Before WARDLAW, W. FLETCHER, Circuit Judges, and WHYTE,\* District Judge.

### MEMORANDUM \*\*

Petitioner Teodoro Rodriguez–Roman, a native and citizen of Mexico, seeks review of the Board of Immigration Appeals's ("BIA") decision not to reopen his deportation proceedings. The BIA denied petitioner's motion to reopen as untimely and declined to exercise its *sua sponte* power to reopen under 8 C.F.R. § 3.2(a). This timely petition for review followed.[1] We deny the petition.

The INS commenced deportation proceedings against petitioner on September 24, 1991 under § 241(a)(1)(B) of the Immigration and Nationality Act ("INA") based on his entry into the United States without inspection. In April 1992, the Immigration Judge denied petitioner's application for suspension of deportation but allowed petitioner to depart voluntarily. Petitioner appealed the denial of his application for suspension of deportation to the BIA on April 9, 1992, which the BIA denied nearly eight years later by written opinion dated February 7, 2000. On July 18, 2000, petitioner filed a motion to reopen his deportation proceedings in order to present additional evidence of the hardship his deportation would cause to him and his family based on their continued assimilation into the United States during the eight years in which his appeal before the BIA was pending.

*The BIA's Refusal to Exercise Its* Sua Sponte *Power to Reopen*

Petitioner first argues that the BIA abused its discretion in denying his motion to reopen his deportation proceedings. A motion to reopen deportation proceedings "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceedings sought to be reopened." 8 C.F.R. § 3.2(c)(2). Petitioner does not dispute that his motion to reopen was untimely.[2] Instead, he contends that the BIA abused its discretion by declining to exercise its power to reopen his proceedings *sua sponte*. The BIA has recognized that 8 U.S.C. § 3.2(a) "allows the Board to reopen proceedings *sua sponte* in exceptional

---

\* The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Because deportation proceedings were commenced against petitioner before April 1, 1997, and the final order of deportation was entered after October 30, 1996, we have jurisdiction over this appeal pursuant to 8 U.S.C.

§ 1105a, as amended by § 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546. *See* IIRIRA § 309(c)(1), (4).

2. Petitioner filed his motion to reopen on July 18, 2000, over 160 days after the BIA rendered its final administrative decision on February 7, 2000. Also, petitioner did not argue that any of the exceptions to the 90–day rule applies to his case. *See* 8 C.F.R. § 3.2(c)(3).

situations," *In re J–J,* 21 I. & N. Dec. 976, 984, Interim Decision (BIA) 3323, 1997 WL 434418 (BIA July 31, 1997), where the applicant has "demonstrate[d] that such a situation exists," *In re Beckford,* Interim Decision (BIA) 3425, 2000 WL 41584 (BIA Jan. 19, 2000) (unpublished).

■ We have not yet decided whether the BIA's discretionary decision not to exercise its *sua sponte* power to reopen deportation proceedings is subject to judicial review. *See* 5 U.S.C. § 701(a) (judicial review is precluded under the Administrative Procedure Act "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law"). Even if we were to find, however, that we have jurisdiction to review the BIA's decision not to exercise its *sua sponte* power, petitioner has not demonstrated that an "exceptional situation" exists requiring the BIA to have exercised its *sua sponte* power to reopen.

The INA defines a similar phrase,[3] "exceptional circumstances," as follows:

The term "exceptional circumstances" refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien.

8 U.S.C. § 1252b(f) (1996).

We have previously determined that the failure to receive actual notice does not constitute an "exceptional circumstance." *See Farhoud v. INS,* 122 F.3d 794, 796

(9th Cir.1997). Here, petitioner argues that neither he nor his counsel ever received actual notice of the BIA's February 7, 2000 decision; thus precluding him from filing a timely motion to reopen. This argument is analogous to the argument made in *Farhoud,* and petitioner's circumstances are far "less compelling" than the circumstances set forth in the INA's definition of "exceptional circumstances." *See also In re J–J,* 21 I. & N. Dec. at 984 ("The power to reopen on our own motion is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship."). Accordingly, even if we were to determine that we have jurisdiction to review the BIA's decision not to exercise its *sua sponte* power to reopen petitioner's deportation proceedings, we would not find that BIA abused its discretion in failing to exercise that power.

*Sufficiency of the BIA's February 7, 2000 Opinion*

■ Petitioner also contends that the BIA abused its discretion by making merely conclusory statements in its January 16, 2001 opinion and by failing to take into consideration all facts relevant to its determination of whether to reopen petitioner's case *sua sponte. See Arrozal v. INS,* 159 F.3d 429, 432 (9th Cir.1998) ("The BIA abuses its discretion when it 'fails to state its reasons and show proper consideration of *all* factors when weighing equities and denying relief.' "). The record reflects,

**3.** The BIA appears to accept the phrase "exceptional circumstances" as a substitute for the phrase "exceptional situation." *See, e.g., In re G–D–,* Interim Decision (BIA) 3148, 1999 WL 1072237 (BIA Nov. 23, 1999) (unpublished) (citing *Motions and Appeals in Immigration Proceedings,* 61 Fed.Reg. 18,900, 18,902 (1996) for the proposition that "(S)ection 3.2(a) of the rule provides a mechanism that allows the Board to reopen or reconsider

*sua sponte* and provides a procedural vehicle for the consideration of cases with exceptional circumstances"); *In re H–A–,* Interim Decision (BIA) 3394, 1999 WL 325675 (BIA May 25, 1999) (unpublished) (characterizing *Matter of J–J–* as "holding that reopening *sua sponte* is limited to exceptional circumstances and is not meant to cure filing defects or circumvent the regulations to prevent hardship").

however, that the BIA did show proper consideration of all factors and adequately stated its reasons for declining to exercise its *sua sponte* power to reopen petitioner's case. Contrary to petitioner's assertion that the BIA "simply conclud[ed] that exceptional situations 'are not present here,'" the BIA specifically addressed petitioner's argument that neither he nor his counsel ever received the BIA's February 7, 2000 decision and articulated its reasons for why it found petitioner's argument unpersuasive. Indeed, because the affidavits submitted by petitioner in support of his argument contained only conclusory assertions that neither he nor his counsel ever received the BIA's decision, the BIA could not reasonably have been expected to give further consideration to those affidavits.

*Petitioner's Due Process Rights*

 Finally, petitioner argues that his failure to receive actual notice of the BIA's February 7, 2000 decision, which he argues denied him the opportunity to reopen his case to present additional evidence of hardship, violated his due process rights. The Supreme Court has held, however, that due process requires only that notice be "reasonably calculated to reach interested parties." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In the context of a deportation hearing, we previously held that due process does not require actual notice of the hearing and that mailing notice to an alien's address was reasonably calculated to ensure that notice reached the alien. *See Farhoud,* 122 F.3d at 796.

Here, the record reflects that the BIA mailed its decision to petitioner's counsel, Jesus De La Riva, on February 7, 2000. Petitioner did not present any evidence showing that the BIA failed to mail the

decision; rather, petitioner only argued that neither he nor his counsel ever received the decision. Because the undisputed evidence of record shows that the BIA mailed the decision to petitioner's counsel, the due process requirement that notice be reasonably calculated to reach petitioner was satisfied.

Furthermore, petitioner could have brought new evidence of hardship to the BIA's attention at any time during the pendency of his appeal, including when the BIA affirmatively solicited additional briefing from the parties on March 9, 1998. There is no evidence, however, that petitioner ever availed himself of this opportunity. Accordingly, we find that the BIA's decision not to reopen petitioner's deportation proceedings did not violate his due process rights.

AFFIRMED.