**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUIS FRANCO-ROSENDO; EULALIA
ZACARIAS DE FRANCO,
                          *Petitioners,*

v.

ALBERTO R. GONZALES, Attorney
General,
                          *Respondent.*

No. 04-75173

Agency Nos.
A79-588-556
A79-588-557

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 7, 2006—Pasadena, California

Filed July 18, 2006

Before: Stephen Reinhardt, Stephen S. Trott, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt

7929

## COUNSEL

Carlos Vellanoweth, John Wolfgang Gehart, Elena Yampolsky & Russell Marco Jauregui, Vellanoweth & Gehart, LLP, Los Angeles, California, for the petitioner-appellant.

Peter D. Keisler, Terri J. Scadron & Margot L. Nadel, U.S. Department of Justice, Washington, DC, for the respondent-appellee.

## OPINION

REINHARDT, Circuit Judge:

Luis Franco-Rosendo and Eulalia Zacarias de Franco, natives and citizens of Mexico, petition for review of the Board of Immigration Appeals ("BIA") decision of September 24, 2004, denying their motion to reopen. We grant their petition and remand to the BIA for further consideration.

The petitioners entered the United States from Mexico without inspection on or about April 25, 1990. They are married and currently reside in Reedley, California with their four United States citizen children. On December 3, 2001, the petitioners were issued a Notice to Appear. In the subsequent hearing, the couple conceded removability but requested cancellation of removal. The Immigration Judge ("IJ") denied their request. The IJ's decision was affirmed by the BIA on the ground that the couple failed to demonstrate that their United States citizen children would suffer "exceptional and extremely unusual hardship." 8 U.S.C. § 1229b(b)(1)(D). The BIA instead granted voluntary departure.

By the time voluntary departure was granted, however, the female petitioner had become seriously ill. The couple failed to pay their departure bond and thus, they argue, effectively declined the offer of voluntary departure. The couple then filed a timely motion to reopen on July 23, 2004, providing the BIA with information about the female petitioner's illness and the likely effect on her four United States citizen children if their critically ill mother were deported. In its opinion, the BIA assumed that the couple's failure to depart did not make them statutorily ineligible for relief, but denied the motion to reopen in the exercise of its discretion. Petitioners request review from this Court.

**[1]** We review BIA denials of motions to reopen for abuse of discretion. *Medina-Morales v. Ashcroft*, 371 F.3d 520, 529 (9th Cir. 2004). The BIA abuses its discretion when it acts "arbitrarily, irrationally, or contrary to law." *Chete Juarez v. Ashcroft,* 376 F.3d 944, 947 (9th Cir. 2004) (quoting *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000)). In order for the court to exercise our limited authority, there must be a reasoned explanation by the BIA of the basis for its decision. *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005). The BIA abuses its discretion when it fails to "consider and address in its entirety the evidence submitted by a petitioner" and to "issue a decision that fully explains the reasons for

denying a motion to reopen." *Mohammed v. Gonzales*, 400 F.3d 785, 792-93 (9th Cir. 2005). It is required to weigh "both favorable and unfavorable factors by evaluating all of them, assigning weight or importance to each one separately and then to all of them cumulatively." *Arrozal v. INS*, 159 F.3d 429, 433 (9th Cir. 1998) (quoting *Campos-Granillo v. INS*, 12 F.3d 849, 852 (9th Cir. 1993)). In doing so, the BIA must "tak[e] into account the social and humane considerations presented in an applicant's favor." *Arrozal*, 159 F.3d at 432-33 (emphasis and internal quotation marks omitted).

[2] The decision in this case fails to meet the abovementioned requirements. The petitioners presented evidence that the wife had become critically ill and that traveling to Mexico could threaten her health.[1] They urged that, accordingly, they had become eligible for cancellation of removal and provided a letter from the wife's doctor explaining that her illness "may be, in fact, life threatening," and that "it is essential that [she] be allowed to remain in the area and receive the proper evaluation and proper medical care." The petitioners explained that the wife is unlikely to get adequate medical treatment in Mexico because the family hails from an isolated, indigenous community, five hours from the nearest hospital, and she speaks only limited Spanish.[2] They argued that requiring her to travel, thereby preventing her from receiving proper medical care, could have a devastating effect on her four United States citizen children, aged seven, four, two and four months.

---

[1] Although the symptoms of the female petitioner's illness appeared prior to the April 7, 2004 BIA decision granting voluntary departure, she was pregnant when the symptoms began. Because her primary symptoms were uterine and back pain, it is not surprising that she failed to realize that the pains she was experiencing would outlast her recovery from childbirth on March 22, 2004. It was not until after the BIA decision granting voluntary departure that her doctor informed her that "traveling could threaten [her] health." The doctor's note stating that her condition may be life threatening was not written until July 8, 2004.

[2] The wife's native language is Nahuatl, an indigenous language. She learned Spanish only after coming to the United States and her Spanish remains limited. The husband is also not a native Spanish speaker.

**[3]** Rather than "taking into account the social and humane considerations" and "assigning weight . . . to each one," *Arrozal*, 159 F.3d at 432-33, the BIA did not mention petitioner's medical problems when it explained its reasons for denying the motion. It discussed only the fact that petitioners elected not to pay their $500 voluntary departure bond. The BIA's explanation of its decision, in its entirety, consisted of the following paragraph:

> In the instant case, we will assume that the respondents' argument is correct, and they may be able to eligible [sic] for cancellation of removal. However, we have considered that the respondents did not leave the United States after successfully appealing the Immigration Judge's denial of their voluntary departure application. In balancing these factors, we conclude that the respondents have not convinced us that these proceedings should be reopened in the exercise of our discretion. The respondents indicated at the hearing that they would comply with all the obligations imposed by law in exchange for the privilege of leaving this country voluntarily, and not under an order of removal. In addition, their appeal brief specifically requested that the Board reverse the Immigration Judge's denial of their voluntary departure request. Instead, they chose to ignore their obligation, remain in the United States, and now request that the Board favorably exercise our discretion on their behalf. For discretionary considerations, we find that it is inappropriate to reopen these proceedings.

This decision is inadequate. In *Arrozal*, the BIA at least stated that it "recognize[d] the respondent's significant equities, particularly those related to her United States citizen children who are in no way responsible for their parent's past conduct." *Arrozal*, 159 F.3d at 433. Here, the BIA does not even "waive [sic] aside" the equities. *Id.* at 434. It makes no

mention of the factors favoring petitioners' motion or the effect of these factors on their United States citizen children. Nor does the BIA consider whether the inability to travel might have affected the couple's "choice" to "ignore their obligation" to depart. The BIA's only allusion to the equities involved in petitioners' case is the statement: "[i]n balancing these [unspecified] factors." This is a far cry from the detailed consideration of each factor required by the court in *Arrozal*. Additionally, as in *Mohammed*, the BIA "gave no indication that it considered . . . the significant documentary evidence" provided by the affidavit and the doctor's note submitted with the motion to reopen. *Mohammed*, 400 F.3d at 792. Certainly, the BIA did not "take into account" any "humane considerations." *Arrozal*, 159 F.3d at 432-33.

**[4]** Instead of evaluating the favorable factors and the evidence, the BIA considered exclusively the petitioners' failure to depart, even though it assumed that they were eligible for relief. Where, as here, the petitioners are eligible for relief, any misconduct does not change the BIA's responsibility to weigh all the factors, positive *and* negative.[3] *Arrozal*, 159 F.3d at 434 (The "BIA cannot just waive [sic] aside [Arrozal]'s favorable factors merely because she failed to report for deportation."). The BIA's failure to identify and evaluate the favorable factors was an abuse of discretion.

The government argues that the petition to reopen goes primarily to the merits of the underlying decision. This assertion is surprising, given the completely new evidence of the wife's potentially life-threatening illness. However, even if this were "a thinly disguised attempt to relitigate the merits," the BIA

---

[3]At oral argument, the government relied on *INS v. Bagamasbad*, 429 U.S. 24 (1976). *Bagamasbad* is not relevant. There, the Court held that if the BIA could properly deny a motion to reopen in the exercise of its discretion, there was no need to consider eligibility for the underlying relief. *Id.* at 26. Here, the BIA assumed that the petitioners were eligible for relief, and the only issue is whether the BIA properly made and explained its discretionary decision.

would not be excused from explaining its reasoning. *Movsi-sian*, 395 F.3d at 1098.

For these reasons, we find that the BIA abused its discretion. Thus, we **GRANT** the petition and **REMAND** to the BIA for further proceedings consistent with this opinion.