**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JORGE RAFAEL PORTILLO-ORELLANA, | No. 14-70821 |
| Petitioner, | Agency No. A206-513-042 |
| v. | MEMORANDUM[*] |
| JEFFERSON B. SESSIONS III, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 6, 2018[**]
Pasadena, California

Before: REINHARDT, TASHIMA, and NGUYEN, Circuit Judges.

Jorge Rafael Portillo-Orellana is a citizen of El Salvador who has sought

asylum, withholding of removal, and relief from removal under the Convention

Against Torture ("CAT"). The Board of Immigration Appeals ("BIA") denied all

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

relief, and he now petitions for review of that decision. Because the BIA erred in its determination that Portillo-Orellana had not established a nexus to a protected ground for purposes of asylum and withholding, and because it failed to issue a reasoned decision regarding the CAT claim, we grant the petition for review.

Portillo-Orellana is a former member of the Salvadoran National Civilian Police who, while on the police force, engaged in anti-gang activity. Because the immigration judge did not find that Portillo-Orellana's testimony was not credible, "the facts to which he testified are deemed true." *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011) (alteration and internal quotation marks omitted). In March 2013, while off-duty, Portillo-Orellana observed unusual activity at a neighborhood house whose residents he knew to be affiliated with the Mara 18 gang. He inferred that gang members were selling drugs and accordingly determined that an immediate police response was necessary. He called a coworker, who then arranged for a unit's response; several gang members were detained.

Approximately three weeks later, armed members of Mara 18 threatened Portillo-Orellana at his home. They referred to his status as a police officer and to his role in triggering a response by the department to gang activity. The gang members threatened to kill him and remained—as Portillo-Orellana described the

scene, with "their guns in the air"—for roughly ten minutes. Portillo-Orellana and his wife gathered up their children and fled from their home. The next day, Portillo-Orellana determined that he had to leave the country. His wife delivered his resignation from the police force to headquarters, and he left El Salvador within the week. Following Portillo-Orellana's departure, gang members have continued to search for him. They have threatened both his wife and his daughter with harm for failing to reveal his whereabouts. Additionally, gang members who threatened his coworker mentioned Portillo-Orellana's name; the coworker has since left the police force and fled as well.

The agency construed the threats that Portillo-Orellana experienced as the result of a "personal dispute[] with gang members" or, perhaps, "general conditions of violence"—not a result of Portillo-Orellana's conduct as a police officer. A reasonable factfinder is compelled to conclude that this determination is without substantial evidence in the record. Portillo-Orellana's status as a Salvadoran police officer who engaged in anti-gang activity was "one central reason for the persecution." *Parussimova v. Mukasey*, 555 F.3d 734, 740 (9th Cir. 2009) (internal quotation marks omitted). The threats were not due solely, if at all, to some sort of purely personal grievance.

3

Mara 18 members targeted Portillo-Orellana because he, as a police officer, ensured a police response to gang activity. As the gang members' statements in threatening Portillo-Orellana make clear, they viewed his actions not as those of an ordinary civilian, dissociated from the government, but as those of a police officer. In *Madrigal v. Holder*, 716 F.3d 499 (9th Cir. 2013), we explained, "If Los Zetas continued to pursue [the petitioner] even after he left the army, the record compels the conclusion that such mistreatment was motivated by the cartel's disapproval of his anti-drug activites and its hope to intimidate him and others like him." 716 F.3d at 506. Here, the record demonstrates continued pursuit of Portillo-Orellana following his departure from the Salvadoran police and therefore compels an analogous conclusion: persecution on account of Portillo-Orellana's status as a former Salvadoran police officer who had engaged in anti-gang activity. The BIA's conclusion that Portillo-Orellana has not established a nexus to a protected ground was not supported by substantial evidence.

Regarding Portillo-Orellana's CAT claim, the BIA did not issue any sort of reasoned decision. It stated only that Portillo-Orellana "did not to show [*sic*] that he is more likely than not to be tortured in El Salvador with the consent or acquiescence of a government official" and cited to the relevant regulatory sections. Our precedent is clear that this type of boilerplate reasoning by the BIA is

4

insufficient. "In order for the court to exercise our limited authority, there must be a reasoned explanation by the BIA of the basis for its decision." *Pirir-Boc v. Holder*, 750 F.3d 1077, 1086 (9th Cir. 2014) (quoting *Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006)).

We GRANT the petition for review and REMAND for additional proceedings consistent with this disposition.