Carlos Adolfo **CAMPOS–GRANILLO,**
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 92–70335.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1993.

Decided Dec. 8, 1993.

As Amended Feb. 16, 1994.

---

Kaye A.Y. Evans, Beverly Hills, CA, for petitioner.

Lisa Dornell, U.S. Dept. of Justice, Washington, DC, for respondent.

Before REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN, Senior District Judge.*

## OPINION

REINHARDT, Circuit Judge:

### I. INTRODUCTION

Petitioner Carlos Adolfo Campos–Granillo appeals a final order of the Board of Immigration Appeals ("BIA"), which affirmed an Immigration Judge's ("IJ") denial of Campos–Granillo's request for voluntary departure. Because the BIA did not conduct an independent review of the IJ's decision, it is the IJ's decision that we review. Here, the IJ failed to weigh all relevant factors in making her decision. Accordingly, we vacate the BIA's order and remand the case for further proceedings.

### II. FACTS AND PROCEEDINGS BELOW

Petitioner Carlos Adolfo Campos–Granillo is a 28–year–old citizen of Mexico who has resided in the United States almost continuously since June of 1983. He is married and has three children, all of whom live in the United States with him.[1] In April 1991, the INS issued Campos–Granillo an Order to Show Cause for entering the United States without inspection. *See* 8 U.S.C. § 1251(a)(1)(B).[2] He conceded deportability

---

* The Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation.

1. His wife and the children (ages 10, 8, and 6 at the time of the hearing) are also Mexican citizens. They entered the U.S. in 1986 without inspection to live with petitioner. Petitioner paid an individual $300 to help them enter this country.

2. 8 U.S.C. § 1251(a)(1)(B) provides in pertinent part:

    Any alien who entered the United States without inspection ... is deportable.

and filed an application for suspension of deportation under 8 U.S.C. § 1254(a)(1). In the alternative, he requested voluntary departure under 8 U.S.C. § 1254(e).[3] Campos–Granillo received a hearing before an Immigration Judge.

At the hearing, Campos–Granillo testified that he had entered the United States in 1983 without inspection and that he had subsequently made several brief departures to Mexico.[4] Aside from those brief visits, however, Campos–Granillo had lived in this country uninterruptedly for eight years at the time of the hearing. His wife, children, and friends all reside within the United States, and Campos–Granillo testified that he had no close ties in Mexico.[5] He has never been convicted of any felony.[6]

During the suspension of deportation phase of the hearing, the IJ found Campos–Granillo to be honest, law-abiding, and a person of good moral character. She stated:

I have observed the respondent. I do believe he's been truthful during this hearing *and has no desire to necessarily disobey the laws if he can help it.*

**3.** 8 U.S.C. § 1254(e) provides in pertinent part: The Attorney General may, in his discretion, permit any alien under deportation proceedings ... to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure....

**4.** The dates and duration of his departures to Mexico were as follows: one month in April 1984, one and a half months in April 1985, one month in August 1985, and ten days in September 1985. Campos–Granillo testified that he was apprehended by the Border Patrol upon returning from his September 1985 departure and that he went back to Mexico. Nothing in the record indicates that a deportation proceeding was initiated, however, and he was not incarcerated. He returned to the United States three days after the incident.

**5.** Campos–Granillo's father is deceased. Although he has a mother and a brother in Mexico, Campos–Granillo lost contact with them over five years ago.

**6.** Campos–Granillo was convicted in 1991 for driving under the influence of alcohol. He was mistakenly charged for petty theft in 1988.

She also concluded: "He would appear to qualify under the good moral character statutory requirement." Nonetheless, she found Campos–Granillo to be statutorily ineligible for suspension of deportation because he had not been physically present in the United States continuously for seven years. Campos–Granillos does not appeal this finding of statutory ineligibility.

During the voluntary departure phase of the hearing, Campos–Granillo testified that he would leave the United States voluntarily by the designated date if he were granted such relief. He also testified that he would try to return to the United States through legal means only and that he "will not think of" returning illegally. Finally, he testified that he had sufficient funds to finance his departure.

Despite Campos–Granillo's testimony and his good moral character, the IJ denied Campos–Granillo's request for voluntary departure as a matter of discretion. She based her decision primarily on a single phrase in his testimony—"I would have to return"—which she interpreted to mean that he would come back illegally.[7] She also gave consider-

**7.** The following exchange took place between the government's attorney and petitioner during the hearing:

Q. Sir, if you leave this country, are you going to leave your wife and children behind or are you going to take them with you?
A. It will be difficult. I have not thought about it yet because it will be difficult. If we ... if I return to Mexico, I don't have anything over there.
Q. Well, if you go to Mexico, will you just come back through the hills again then as soon as you can? Like you've done before?
A. I would try to obtain a document like I've been thinking about it because *I will not think of returning that way.*
Q. Is it your understanding you can't get a green card if you don't get one here today?
A. You mean that I know of?
Q. Yes.
A. *I don't know a lot about laws, but I would try to find a way through my work or through other people.*
Q. Well, sir, if you're in Mexico and you find out you can't get a green card, and you can't come back ... legally, are you going to come through the hills again?
A. My children will have to remain here because they will not be able to adapt in Mexico, and *I would have to return.*

ation to his immigration history. Accordingly, the IJ ordered Campos–Granillo deported to Mexico.

Campos–Granillo filed an appeal with the BIA. The Board dismissed the appeal, affirming the IJ's judgment on both the suspension of deportation issue as well as the voluntary departure issue. Before this court, Campos–Granillo challenges only the voluntary departure order.

## III. DISCUSSION

### A. The BIA's Decision

■ Where the BIA does not perform an independent review of the IJ's decision and instead defers to the IJ's exercise of his or her discretion, it is the IJ's decision that we review. *See Yepes–Prado v. INS,* 10 F.3d 1363, 1366–1367 (9th Cir.1993). In this case, the BIA merely listed factors that are generally considered in deportation hearings and ultimately deferred to the IJ's exercise of her discretion. The Board stated:

> In determining whether an alien is worthy of discretionary relief, the Board considers many factors, including the alien's prior immigration history, the nature of his entry, and his violations of immigration and other laws, as well as his length of residence in the United States, close family ties, and humanitarian needs.

Instead of applying these factors to the petitioner's case, however, the Board simply concluded:

> We agree that the respondent has not met his burden of establishing that he is entitled to voluntary departure in the exercise of discretion. *It is well-established that by its very nature, a discretionary determination permits wide latitude to the authority charged with its exercise* (citation

Based on this exchange, the IJ concluded that "the Court can only interpret that to mean that he would come back illegally."

**8.** Favorable factors include: family ties within the United States; residence of long duration in this country, particularly if residence began at a young age; hardship to the petitioner or petitioner's family if relief is not granted; service in the United States armed forces; a history of employment; the existence of business or property ties; evidence of value and service to the community;

omitted). After thoroughly reviewing the evidence of record, *we find no error by the immigration judge in denying [petitioner] the requested relief.*

The Board did not purport to exercise its own discretion, but merely concluded that the IJ did not err in exercising hers. Accordingly, we must review the IJ's decision. *See id.*

### B. The IJ's Decision

■ Although administrative agencies have great latitude in exercising their discretion to grant or deny requests for voluntary departure, such discretion does not "strip the inquiry of all guideposts." *Mabugat v. INS,* 937 F.2d 426, 432 (9th Cir.1991). One such guidepost is the requirement that the agency "must weigh both favorable and unfavorable factors." *De la Luz v. INS,* 713 F.2d 545, 545 (9th Cir.1983).[8] The IJ is required to weigh favorable and unfavorable factors by "evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively." *In re Edwards,* Interim Decision No. 3134 (available on Westlaw, 1990 WL 385757, FIM–BIA database), 1990 BIA LEXIS 8, at *22 (BIA 1990) (Morris, concurring). Mere conclusory statements by the IJ are insufficient—the reviewing court must see that the petitioner's claims have been "heard, considered, and decided." *Villanueva–Franco v. INS,* 802 F.2d 327, 330 (9th Cir.1986). This rule applies to the granting of discretionary relief in voluntary departure proceedings. *See Hernandez–Luis v. INS,* 869 F.2d 496, 499 (9th Cir.1989).

■ In this case, the record shows that the IJ based her determination solely on factors that were unfavorable to the petitioner—Campos–Granillo's somewhat ambiguous statement that he "would have to come back"

proof of rehabilitation if a criminal record exists; and other evidence attesting to good character. *See Yepes–Prado,* 10 F.3d at 1366.

Unfavorable factors include: the nature and underlying circumstances of the exclusion or deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident. *See id.*

in the future and his immigration history. The IJ determined:

> [I]n granting even the minimal relief of voluntary departure, I must ·consider [Campos–Granillo's] answers that were given during the relief phase of suspension as well as voluntary departure. The respondent has a pattern of coming and going illegally. He also had his family smuggled into the United States and has now also stated that, if he cannot return legally, he will return through the hills because his family is here. I cannot condone that type of action since it is a violation of Immigration Laws.

Although the IJ had mentioned some favorable factors (e.g., Campos–Granillo's good moral character, his honesty, and his desire to obey the law) when determining that he was ineligible for suspension of deportation, there is no indication in her opinion that she considered *any* of those factors when deciding the voluntary departure issue. In the absence of a clear demonstration that the IJ considered both the positive and negative factors when making her discretionary decision not to grant voluntary departure, we are required to vacate and remand.

We note the critical nature of Campos–Granillo's somewhat ambiguous statement that he "will have to return." On remand, the IJ must evaluate that statement in light of Campos–Granillo's other statements about his desire to comply with the law. She must show that her interpretation is supported and not contradicted by the rest of the record. *See Mattis v. INS,* 774 F.2d 965, 968 (9th Cir.1985) (reversing the BIA's denial of a discretionary motion to reopen); *Fazelihok-mabad v. INS,* 794 F.2d 1470, 1473 (9th Cir.1986) (same), *vacated on other grounds,* 485 U.S. 930, 108 S.Ct. 1102, 99 L.Ed.2d 264 (1988). If, after making such an analysis,

she once again determines that Campos–Granillo's statement means that he intends to return to this country *illegally,* then she must weigh that conclusion along with all of the other favorable and unfavorable factors in this case when exercising her discretion with respect to granting or denying voluntary departure.[9]

## IV. CONCLUSION

We VACATE the BIA's order affirming the IJ's denial of Campos–Granillo's petition for voluntary departure, and we REMAND for proceedings not inconsistent with this opinion. This panel will retain jurisdiction over any further proceedings or any further petitions that may be filed in this matter.

VACATED AND REMANDED.

---

9. Although we upheld a denial of discretionary relief based upon a similar statement in *Hernandez–Luis,* we did so only after finding that the BIA had properly weighed *all* positive and negative factors, including the petitioner's failure to promise that he would not reenter the United States illegally. Furthermore, there was no evidence whatsoever that the petitioner in *Hernandez–Luiz* was of good moral character.

*INS v. Rios–Pineda,* 471 U.S. 444, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), is also not to the

contrary. Although the Supreme Court upheld a denial of discretionary relief in that case, *Rios–Pineda* merely stands for the proposition that the Attorney General has discretion *to consider* the petitioner's immigration history in granting discretionary relief. The Court never held that immigration history was a *per se* bar to voluntary departure. Finally, we note that the petitioner in *Rios–Pineda* had already been granted voluntary departure, and he had failed to do so.