**Alexandru GEORGIU, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 95–70293.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1996.

Decided July 19, 1996.

Carol L. Edward, Seattle, Washington, for petitioner.

Michelle Gluck, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for respondent.

Before: REAVLEY,* REINHARDT, and WIGGINS, Circuit Judges.

PER CURIAM:

Alexandru Georgiu, a thirty-year-old native and citizen of Romania, was lawfully admitted to the United States as a political refugee and granted permanent resident status on August 13, 1984. He has lived here since then and has maintained steady employment. On November 4, 1988, he was convicted of armed robbery in Michigan, and on December 8, 1988, he was sentenced to three and one-half to twenty years in prison.[1] The record contains no evidence of Georgiu's having been arrested or convicted of any other criminal offense, either here or in Romania.

On July 31, 1991, the Immigration and Naturalization Service (INS) ordered Georgiu to show cause why he should not be deported under section 241 as an alien who has been convicted of a crime of moral turpitude within five years of the date of entry and sentenced or confined for at least one year. 8 U.S.C. § 1251(a)(2)(A)(i). Georgiu admitted that he was eligible for deportation but petitioned for relief under section 212(c). 8 U.S.C. § 1182(c). The Immigration Judge (IJ) denied the waiver. Based upon its review of the record, the Board of Immigration Appeals (BIA) affirmed.

### STANDARD OF REVIEW

We review decisions to deny section 212(c) relief under the abuse of discretion standard. *Pablo v. INS*, 72 F.3d 110, 113 (9th Cir.1995). "[T]he INS is required to 'weigh favorable and unfavorable factors by evaluating all of them, assigning weight to

---

* The Honorable Thomas M. Reavley, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. Georgiu pled guilty to armed robbery.

each one separately and then to all of them cumulatively.'" *Rashtabadi v. INS*, 23 F.3d 1562, 1570 (9th Cir.1994) (quoting *Campos–Granillo v. INS*, 12 F.3d 849, 852 (9th Cir. 1993)). "'[T]he agency must indicate how it weighed the factors involved and how it arrived at its conclusion.'" *Id.* (quoting *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993)). Mere conclusory statements are not sufficient. *Campos–Granillo*, 12 F.3d at 852. The agency abuses its discretion "if it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Pablo*, 72 F.3d at 113 (citation and internal quotation marks omitted). "A denial of relief may be affirmed only on the basis articulated in the agency's decision and [this court] cannot assume that the INS considered factors that it failed to mention." *Yepes–Prado*, 10 F.3d at 1366.

### DISCUSSION

■ The BIA abused its discretion in denying Georgiu's petition for 212(c) relief.[2] The BIA failed to adhere to the requirement that it weigh both favorable and unfavorable factors and did not properly explain the basis for its decision. First, the BIA failed to discuss Georgiu's family ties in the United States, his employment history, or his value and service to the community (although it did consider the hardship that his deportation might have on him and his family members.)

We cannot assume that the BIA considered the factors it failed to discuss. Second, the BIA failed to explain how it assessed the evidence of rehabilitation. Last, the BIA failed to address the facts and circumstances underlying the particular criminal offense and explain how that sole adverse factor outweighed all the positive factors considered cumulatively.

The positive equities the BIA failed to address are important. First, although the BIA mentioned that Georgiu's entire family lives in the United States when assessing the hardship that would result from his deportation, it did not consider that Georgiu's numerous family ties constitute a significant factor *in his favor*. See *Kahn v. INS*, 36 F.3d 1412, 1414 (9th Cir.1994) (stating that "the existence of substantial family ties in the United States is a weighty factor in the support of the favorable exercise of discretion under § 212(c)"); *see also Agustin v. INS*, 700 F.2d 564, 565 (9th Cir.1983) (concluding that petitioner's situation was no different from that of any other alien who faces deportation after living in this country for several years because his parents and five siblings resided in the country to which he would be deported).[3] Second, the BIA ignored Georgiu's employment history. Since his arrival in this country, including much of his time in prison, Georgiu has been steadily employed.[4] His excellent work history is a

---

2. We agree with the INS that although the BIA referred to and affirmed the IJ's findings, the BIA made its own discretionary determination, and therefore that we must review the decision of the BIA. When the BIA makes clear that it is adopting the IJ's opinion, we review the IJ's decision. *Alaelua v. INS*, 45 F.3d 1379, 1381–2 (9th Cir.1995) (quoting the BIA's decision, which had affirmed "based upon and for the reasons set forth in th[e IJ's] decision"). However, when, as here, the BIA does not clearly adopt the IJ's decision and instead independently reviews the case, this court reviews the BIA's decision. *See Kazlauskas v. INS*, 46 F.3d 902, 905 (9th Cir. 1995) ("Because the BIA did not independently review Kazlauskas' case and instead adopted the IJ's opinion, we review the decision of the IJ."); *Yepes–Prado v. INS*, 10 F.3d 1363, 1366 (9th Cir.1993) ("[W]here the BIA engages in *de novo* review of the IJ's factual and legal determinations, we consider only the decision of the BIA. . . .").

Here, the BIA stated that "[b]ased upon [its] review of the record," it found the decision of the

IJ to be proper and correct. This statement suggests that the BIA conducted its own independent review of the IJ's factual and legal determinations. Moreover, in closing, the BIA made it clear that, based upon its review of the record, it found relief unwarranted. "Viewing the record as a whole," it stated, "we find that denying relief is warranted in the exercise of discretion and in the best interests of this country."

3. We note that Georgiu's parents are partly dependent on Georgiu for financial support.

4. When Georgiu arrived in this country, he enrolled in the eleventh grade and graduated from high school. He started working approximately a week and a half later. He was employed until the robbery. Within a month and a half of his incarceration, he was working (under supervision) outside the prison, and after about six months, he was working in a work-release program. (As part of the work-release program, Georgiu paid for his transportation to and from work, as well as for his room and board.) He

factor that the BIA should have taken into account. *See Pablo,* 72 F.3d at 113 (listing "history of employment" as a positive factor). Third, although it is not clear what constitutes "evidence of value and service to the community," *id.,* Georgiu's involvement in the community, which has made him an "asset" to the community, warrants serious consideration.[5] The BIA's failure to mention these factors, standing alone, constitutes an abuse of discretion. *See Rashtabadi,* 23 F.3d at 1571 ("The failure to consider an important factor or to make a record of considering it constitutes an abuse of discretion.").

The BIA's "finding" regarding rehabilitation is wholly inadequate. The BIA stated that Georgiu's "showing on this issue is not sufficient when considered with the other factors in his case to justify favorable consideration of his waiver request." AR 3. It is not clear from this statement what weight, if any, the BIA accorded the evidence of rehabilitation. We have stated that

> [i]n order for us to give meaningful review to a finding regarding rehabilitation, we

must understand what factors the INS considers in making such a determination. Obvious considerations include the lack of commission of any additional crimes; enrollment in and attendance at rehabilitation programs; statements of remorse; and letters of good character. The salience and weight of these and other factors may vary from case to case, but where some of these factors exist, the Board must offer more than a bald statement that there is no evidence of rehabilitation.

*Yepes–Prado,* 10 F.3d at 1372–73 n. 19. Here, Georgiu established that he has committed no additional crimes since his incarceration, expressed deep remorse for his actions and a sincere desire to atone for them,[6] and submitted letters from his parole officer and local senior citizen's center director attesting to his good character—all of which are evidence of rehabilitation. *See Rashtabadi,* 23 F.3d at 1571 (stating that evidence of petitioner's taking G.E.D. and vocational classes in prison, positive evaluations by instructors, and absence of further criminal conduct was

---

held that position for approximately a year, until his security level was changed due to the detainer the INS had lodged against him. After his release, he was hired by Alpha Technology, with whom he continued to be employed as a full-time employee at the time of the hearing.

Georgiu submitted various reports concerning his work in prison. Those reports describe him as an "excellent worker," "a very good worker" who "looked forward to going to work everyday" and who "took pride in his work," and as being "ambitious" and having a "positive attitude toward work assignments."

Georgiu also submitted a form entitled "Work Pass Application–Program Eligibility." It states that "[a] resident of a Corrections Work Camp is eligible for consideration for Work Pass status when the superintendent of the Correction Camp reasonably believes that the prisoner will honor this trust, that release into the community would not undermine public confidence in the program," and various criteria are met. It states that Georgiu met the requisite criteria, specifically noting his "excellent work reports."

5. As part of his efforts to redeem himself, Georgiu has committed himself to performing community service. He provides various services to the elderly citizens of his community, including shopping for groceries, shoveling snow, and making repairs. He also serves as a designated driver for a local tavern and performs maintenance services at the local senior citizen's center.

A letter from the Fowlerville Senior Citizen Service Club details his efforts on behalf of the organization. It states that Georgiu "has been a real asset to the Senior Citizens Center and the community," and notes that he "will never accept any pay offered him." It concludes that "[t]his young man certainly is to be commended as an example for our young American citizens."

6. When asked at the hearing to describe the circumstances surrounding the crime, Georgiu stated, "I wish I had a straight answer, but I was very disoriented and I have no ... explanation for ... what I've done. It's ... against everything I believe and everything I was raised of by my family...." He testified that he was very sorry and embarrassed. He committed the robbery because he was in need of money; he was supporting his brother, who had only recently arrived and who was attending school, and he feared losing his car, his home, and his job. He stated, however, that he has no excuse for the crime—that "even if [he had] been starving on the street, [he would] have [had] no excuse." He has done "a lot of soul searching" and wishes he could erase the crime, but since he cannot, he is making every effort to reform himself. He wants to live the most productive life he can, avoiding even the smallest of infractions. He has gone so far as to avoid even having a parking ticket since his release.

"at least probative of [petitioner's] rehabilitation"). Nonetheless, the BIA addressed none of these factors in making its "bald statement" that the evidence of rehabilitation was not sufficient. For this court to review the BIA's decision, we must have *some* idea of the factors the BIA considered in assessing the evidence of rehabilitation and the weight the BIA accorded that evidence.[7]

Next, the BIA failed to assess the particulars of Georgiu's criminal conduct.[8] "[T]he agency must examine the facts surrounding the precise offense and evaluate those circumstances before determining the weight to be afforded a particular ... conviction." *Yepes–Prado,* 10 F.3d at 1371. "Even when classification as 'serious' leads to a requirement of 'unusual' or 'outstanding' equities, that categorization is not to be imposed in a rigid manner inevitably compelling the denial of relief; it is still essential that the seriousness of the petitioner's particular conduct be assessed individually in determining its weight as an adverse factor." *Elramly v. INS,* 73 F.3d 220, 223 n. 4 (9th Cir.1995). The BIA here simply noted that "on account of the respondent's criminal conviction, he must demonstrate unusual or outstanding equities." This does not constitute an assessment of the particulars of Georgiu's offense.

Last, the BIA failed to explain how or why Georgiu's criminal conviction, the sole adverse factor, outweighed the substantial equities weighing in favor of a waiver of deportation. *See Yepes–Prado,* 10 F.3d at 1373.

Again, we were provided with only the barest of conclusory statements.

## CONCLUSION

While it appears to us from the record that the equities in Georgiu's favor, cumulatively considered, significantly outweigh the seriousness of his criminal conduct, and while it appears to us that a failure to grant a waiver of deportation would constitute an abuse of discretion, we do not adopt such a holding at this time. Rather, we VACATE the BIA's denial of Georgiu's petition and REMAND to the BIA for further proceedings consistent with this opinion. We are confident that when the BIA reexamines the record, applies the correct standard, and properly weighs the particular offense against the various positive equities, it will reach the proper result. This panel will retain jurisdiction over any further proceedings or any further petitions that may be filed in this matter.

VACATED and REMANDED.

---

7. *See Liu v. Waters,* 55 F.3d 421, 426–27 (9th Cir.1995) (finding BIA's statement of reasons for discounting evidence of rehabilitation to be adequate where BIA "factored in its own lack of conviction that Liu had been rehabilitated, based on Liu's having attributed his crime to peer pressure and a desire to fit in"); *see also Yepes–Prado,* 10 F.3d at 1370 ("[T]he agency must indicate 'how it weighed the factors involved' and 'how it arrived at its conclusion.' Without such an explanation, a reviewing court cannot tell whether the IJ or the BIA has departed from established policies in deciding a particular 212(c) application and therefore abused its discretion.") (citation omitted).

8. As there is no evidence of immigration violations, any other criminal convictions, or bad character, the only adverse factor that the BIA could have found was Georgiu's conviction for armed robbery. We refer to the equities in Georgiu's favor as substantial based on a comparison of the equities this court described as substantial in *Elramly.* There, the petitioner had family ties in the United States (his wife, ex-wife, and three children), had resided in the country a long time (fifteen years at the time of the hearing), was employed and was described by former employers as dependable, was actively involved with community service, and presented evidence of rehabilitation and good character. *Elramly,* 73 F.3d at 224.