Oscar SOCOP–GONZALEZ, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 98–70782.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2000.

Filed March 27, 2000.

Thomas R. Le Gro, Riverside, California, for the petitioner.

Hugh G. Mullane, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before: PREGERSON and WARDLAW, Circuit Judges, and SHADUR, District Judge.[1]

PREGERSON, Circuit Judge:

Petitioner Oscar A. Socop–Gonzalez was given incorrect information by an INS officer regarding the appropriate procedures for legalizing his immigration status. Socop–Gonzalez relied on that information and, as a result, he did not file the necessary motion to reopen deportation proceedings against him until after the statute of limitations had expired. Two questions are presented for our review. First, we must decide whether the government is equitably estopped from enforcing the statute of limitations against Socop–Gonzalez. Second, we must decide whether these facts create an exceptional situation in which the Board of Immigration Appeals ("Board" or "BIA") should have reopened proceedings sua sponte. We hold that the doctrine of equitable estoppel does not apply in this case, but that the BIA abused its discretion in deciding whether to reopen proceedings. Thus, we grant the petition and reverse.

---

**1.** The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

I

Socop–Gonzalez is a native and citizen of Guatemala. He entered the United States on November 26, 1991 as a nonimmigrant visitor with permission to remain until May 26, 1992. On September 6, 1995, Socop–Gonzalez filed an application for asylum and withholding of deportation. On October 19, 1995, the INS ordered Socop–Gonzalez to show cause why he should not be deported pursuant to the Immigration and Nationality Act ("INA") § 241(a). A hearing was held before an Immigration Judge ("IJ") at which Socop–Gonzalez requested asylum, withholding of deportation, and alternatively, voluntary departure. On April 4, 1996, the IJ denied Socop–Gonzalez's application for asylum and withholding of deportation, and declined to grant him voluntary departure. Two days later, Socop–Gonzalez filed an appeal to the BIA. Socop–Gonzalez was represented by an attorney at the deportation hearing, but he filed the appeal pro se.

On March 30, 1997, while his appeal to the BIA was pending, Socop–Gonzalez married Sandra Haydee Burbano, a United States citizen. On April 7, 1997, Socop–Gonzalez went to the INS officer in Westminster, California to inquire how to submit a petition to immigrate based on his marriage. The INS officer staffing the information booth instructed him to withdraw his asylum appeal, and to file an application for adjustment of status. Socop–Gonzalez followed these instructions: he first sent a letter to the BIA, withdrawing his appeal and then, on April 23, 1997, he mailed an application for adjustment of status to the INS.

The INS began processing Socop–Gonzalez's application for adjustment of status. On July 12, 1997, it sent him a letter instructing him to report to the INS to receive his employment authorization card. On April 7, 1998, the INS issued Socop–Gonzalez a "Notice of Approval of Relative Immigrant Visa Petition." Socop–Gonzalez then requested a "Bona Fide Marriage Exemption."

Meanwhile, the BIA received Socop–Gonzalez's letter withdrawing the appeal and on May 5, 1997 issued an order returning the case to the immigration court. Because this order constituted a final administrative decision in his case, on July 2, 1997, the INS ordered Socop–Gonzalez to report for deportation on August 11, 1997. This notice alerted Socop–Gonzalez to a problem in his effort to adjust his status. On August 6, 1997, Socop–Gonzalez returned to the INS office to ensure that he had taken the proper steps. He spoke with the same INS officer as before. She repeated the information she had told him previously.

On August 11, 1997, Socop–Gonzalez, through new counsel, filed a motion to reopen his case and to reconsider the withdrawal of his appeal from the BIA. The BIA denied the motion to reopen because it was not filed within 90 days of the BIA's May 5, 1997 decision. The BIA also denied the motion to reconsider because it was not filed with 30 days of the BIA's decision. Finally, the BIA declined to exercise its power to reopen or reconsider cases sua sponte, stating that the power was available only in exceptional circumstances and that Socop–Gonzalez failed to demonstrate that his case involved exceptional circumstances. The BIA did not respond to Socop–Gonzalez's argument that the government was estopped from enforcing the statute of limitations against him.

II

■ We have jurisdiction to review the BIA's decision under the INA § 106(a), 8 U.S.C. § 1105a(a), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009–546, § 309.[2]

---

**2.** IIRIRA's transitional rules govern this appeal because deportation proceedings began

in Socop–Gonzalez's case before April 1, 1997 (on October 19, 1995) and a final order of

We review the BIA's ruling on a motion to reopen for an abuse of discretion, *see Shaar v. INS*, 141 F.3d 953, 955 (9th Cir. 1998); *Arrozal v. INS*, 159 F.3d 429, 432 (1998), but we review de novo questions of law, including dismissal on statute of limitations grounds, *see Lopez v. INS*, 184 F.3d 1097, 1099 (9th Cir.1999); *Shaar*, 141 F.3d at 955.

■■■■ A motion to reopen deportation proceedings[3] "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceedings sought to be reopened, or on or before September 30, 1996, whichever is later." 8 C.F.R. § 3.2(c)(2). The parties to this appeal do not dispute that Socop–Gonzalez's motion to reopen was untimely. The final administrative decision in this case was entered on May 5, 1997, when the BIA accepted Socop–Gonzalez's withdrawal of his appeal of his asylum claim. Socop–Gonzalez did not file the motion to reopen until August 11, 1997, seven days after the 90–day window had closed. Instead, Socop–Gonzalez argues the doctrine of equitable estoppel prevents the government from enforcing the statute of limitations against him.

■■■■ The doctrine of equitable estoppel applies against the government only if the government engages in " 'affirmative misconduct going beyond mere negligence.' " *Mukherjee v. INS*, 793 F.2d 1006, 1008 (9th Cir.1986) (quoting *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985)).[4] Socop–Gonzalez argues that the INS officer gave him incorrect information, and that providing incorrect advice constitutes affirmative misconduct. In order to present evidence of his eligibility for adjustment of status, Socop–Gonzalez needed to move to reopen proceedings with the BIA because he was already in deportation proceedings. More importantly, it was not necessary for Socop–Gonzalez to withdraw his appeal to the BIA. He could have filed his application for adjustment of status with the Executive Office of Immigration Review, an agency that includes the BIA, *while* his appeal to the BIA was pending. If he had not withdrawn his appeal, the statute of limitations would not have begun to run until after the

---

deportation was entered after October 30, 1996 (on May 5, 1997). *See* IIRIRA § 309(c)(1); *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). IIRIRA's transitional rules do not deny this court jurisdiction over a motion to reopen where the deportation order was issued under § 241 of the INA. *See Arrozal v. INS*, 159 F.3d 429, 432 (9th Cir. 1998).

3. Socop–Gonzalez casts his motion as both a motion to reopen and a motion to reconsider. Properly titled, it is a motion to reopen, not a motion to reconsider, because Socop–Gonzalez seeks to present new facts not already in evidence. *See Hyun Joon Chung v. INS*, 720 F.2d 1471, 1474 n. 2 (9th Cir.1983); Ira J. Kurzban, *Kurzban's Immigration Law Sourcebook* 738 (6th ed.1998). Here, Socop–Gonzalez seeks to present facts pertaining to his eligibility for adjustment of status. This distinction has no impact on the outcome of this appeal because even if it were a motion to reconsider, the BIA properly denied it as untimely. A motion to reconsider "must be filed with the Board within 30 days after the mailing of the Board decision or on or before July

31, 1996, whichever is later." 8 C.F.R. § 3.2(b)(2). The 30–day window for filing a motion to reconsider lapsed on June 4, 1997.

4. There are additional requirements for estoppel to apply. The party to be estopped must have "made a knowing false representation or concealment of material facts to a party ignorant of the facts, with the intention that the other party should rely on it." *Mukherjee*, 793 F.2d at 1008 (citing *Jaa v. INS*, 779 F.2d 569, 571 (9th Cir.1986)). In addition, when the party estopped is the government, the wrongful act must " 'cause a serious injustice, and the public's interest [must] not suffer undue damage by the imposition of liability.' " *Id.* at 1008–09 (quoting *Morgan*, 779 F.2d at 545). As reflected in the later text discussion, nothing supports the notion that the INS officer *knew* that she was giving Socop–Gonzalez false advice, so that Socop–Gonzalez would fail to prove that element as well. But we need not evaluate the additional factors referred to in this footnote because, as discussed *infra*, Socop–Gonzalez has not satisfied the affirmative misconduct requirement.

BIA decided his asylum appeal. *See* 8 C.F.R. §§ 3.2(c)(1), 3.2(g)(2)(i).

■■■ The INS officer's actions, without more, do not constitute affirmative misconduct. Failure to inform an individual of his or her legal rights is not affirmative misconduct. *See Santiago v. INS,* 526 F.2d 488, 493 (9th Cir.1975) (en banc) (holding that immigration officers did not engage in affirmative misconduct where they admitted otherwise excludable aliens, failed to inform the aliens of the conditions of their visa, and failed to inquire about the circumstances of their entry); *see also Lavin v. Marsh,* 644 F.2d 1378, 1383 (9th Cir.1981) (stating that "[p]ersons dealing with the government are charged with knowing government statutes are regulations, and they assume the risk that government agents may exceed their authority and provide misinformation"). Similarly, the negligent provision of misinformation is not affirmative misconduct. *See Mukherjee,* 793 F.2d at 1009 (holding that there was no affirmative misconduct where the consular officer failed to inform petitioner that his visa was approved and misinformed petitioner that he was not subject to a two-year residency requirement). Here, the INS officer was clearly mistaken when she told Socop–Gonzalez to withdraw his appeal to the BIA and file the application for adjustment of status with the INS. But there is no evidence of "a deliberate lie" or "a pattern of false promises" that would satisfy the requirement of affirmative misconduct. *See id.* Thus, the government is not estopped from applying the statute of limitations to Socop–Gonzalez's motion to reopen.

## III

Even in cases where the statute of limitations has expired, the BIA may reopen deportation proceedings sua sponte:

> The Board may at any time reopen or reconsider on its own motion in any case in which it has rendered a decision.... The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has the discretion to deny a motion to reopen even if the party has made out a prima facie case for relief.

8 C.F.R. § 3.2(a). This regulation does not specify when the BIA should exercise this power, but the BIA has ruled that it will reopen cases in "exceptional situations." *See In re J–J–,* Interim Decision 3323, 1997 WL 434418 (BIA 1997). Socop–Gonzalez argues that the BIA abused its discretion by not reopening his case sua sponte. The INS responds that the BIA's decision is not subject to judicial review. We consider these arguments in reverse order.

## A

■■■ There is a " 'strong presumption that Congress intends judicial review of administrative action.' " *Helgeson v. Bureau of Indian Affairs,* 153 F.3d 1000, 1003 (9th Cir.1998) (quoting *Traynor v. Turnage,* 485 U.S. 535, 542, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988)). This presumption is overcome by " 'clear and convincing evidence of a contrary congressional intent.' " *Id.* (quoting *Board of Governors Fed. Reserve Sys. v. MCorp Fin., Inc.,* 502 U.S. 32, 44, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991)). In addition, administrative agency decisions are not reviewable in the " 'rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply,' " *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (quoting *Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)), and thus, no "meaningful standard against which to judge the agency's exercise of discretion," *id.* The INS does not point to any evidence that Congress intended to deprive the federal courts of power to review the BIA's decision not to reopen proceedings. Instead, the INS relies on *Heckler* to argue that this court may not review the BIA's decision because there is no "meaningful standard" by which to evaluate its

exercise of discretion. The INS's argument presents a question of first impression in this circuit.[5] We conclude that *Heckler* does not preclude this court from reviewing the BIA's decision not to reopen Socop–Gonzalez's case.

■ It is true, as the INS argues, that the language of § 3.2(a) gives the BIA unfettered discretion to reopen deportation proceedings. Section 3.2(a) simply states that the BIA "may" reopen proceedings, and that the decision is within the BIA's "discretion." But "the mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala,* 30 F.3d 1057, 1066 (9th Cir.1994). This court and others have recognized repeatedly that "the Supreme Court's holding in [*Heckler*] does not bar judicial review when an agency's regulation provides the Court with law to apply." *Greater Los Angeles Council on Deafness, Inc. v. Baldrige,* 827 F.2d 1353, 1361 (9th Cir.1987); *see also Diebold v. United States,* 947 F.2d 787, 810 (6th Cir.1991) ("We have examined the statutes and regulations governing the contracting-out process and have found detailed standards to guide the Army in its privatization decisions."); *Massachusetts Public Interest Research Group, Inc. v. United States Nuclear Regulatory Comm'n,* 852 F.2d 9, 16 (1st Cir.1988) ("[A]gency regulations may provide a standard to apply within the meaning of [*Heckler*]"); *Chong v. Director, United States Information Agency,* 821 F.2d 171, 176 (3d Cir.1987) ("We hold ... that these regulations provide sufficient guidance to make possible judicial review under an abuse of discretion stan-

dard."). Similarly, established policies of an administrative agency may provide the law by which to judge an administrative action or inaction: "Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned...." *INS v. Yueh–Shaio Yang,* 519 U.S. 26, 32, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996).

Here, the BIA has established a "meaningful standard" by which this court may review its exercise of discretion. The BIA decided that § 3.2(a) "allows the Board to reopen proceedings sua sponte in *exceptional situations* ... [but] is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship." *In re J–J–,* Interim Decision 3323, 1997 WL 434418 (BIA 1997) (emphasis added); *see also In re G–D–,* Interim Decision 3418, 1999 WL 1072237 (BIA 1999) (applying the exceptional situation standard); *In re L–V–K–,* Interim Decision 3409, 1999 WL 607159 (BIA 1999) (same); *In re X–G–W–,* Interim Decision 3352, 1998 WL 378104 (BIA 1998) (same). We see no reason to distinguish a legal standard established by the BIA, an administrative court, from regulations or policies promulgated by the same agency.

The INS contends that the "exceptional situations" standard is not meaningful, and is really no standard at all. We disagree. The "exceptional situations" language par-

---

5. Only two circuits have addressed this jurisdictional question and, contrary to our decision today, both concluded that the BIA's decision was not reviewable. *See Luis v. INS,* 196 F.3d 36, 40 (1st Cir.1999); *Anin v. Reno,* 188 F.3d 1273, 1279 (11th Cir.1999). We are not persuaded by these decisions because both opinions rest on slim reasoning and are of questionable precedential value. The First Circuit's discussion is *dicta* because, as that court acknowledged, the petitioner had not exhausted his administrative remedies. *See*

*Luis,* 196 F.3d at 40. The Eleventh Circuit decision in *Anin* is inconsistent with a prior decision of that circuit in which the court reviewed a decision under § 3.2(a). *See Mejia Rodriguez v. Reno,* 178 F.3d 1139, 1145 n. 5 (11th Cir.1999). We also observe that the Seventh Circuit has assumed that the BIA's decision is subject to judicial review without discussing the reviewability issue. *See Lucacela v. Reno,* 161 F.3d 1055, 1059 (7th Cir.1998).

rots the "exceptional circumstances" standard employed throughout the federal immigration statute.[6] *See, e.g.,* 8 U.S.C. § 1229a(b)(5)(C)(i) (statute of limitations for filing a motion to reopen deportation proceedings in which the alien did not appear permitted only "if the alien demonstrates that the failure to appeal was because of exceptional circumstances"); 8 U.S.C. § 1158(d)(5)(A)(v) (permitting dismissal of an application for asylum where no "exceptional circumstances" excuse the applicant's failure to appear for an interview or hearing). This court routinely decides challenges to the BIA's exercise of discretion under the INA's "exceptional circumstances" standard. *See, e.g., Singh–Bhathal v. INS,* 170 F.3d 943, 946 (9th Cir.1999) (stating that bad advice by an immigration consultant is not an exceptional circumstance); *Lopez v. INS,* 184 F.3d 1097, 1100 (9th Cir.1999) (stating that fraud is an exceptional circumstance); *Farhoud v. INS,* 122 F.3d 794, 796 (9th Cir.1997) (finding that petitioner's claim that he did not receive notice of his deportation hearing did not qualify as an exceptional circumstance); *Sharma v. INS,* 89 F.3d 545, 547 (9th Cir.1996) (holding that traffic delays do not constitute exceptional circumstances). As a result, we are confident of our ability to evaluate whether a particular case presents an "exceptional situation." *Cf. Dickson v. Secretary of Defense,* 68 F.3d 1396, 1403 (D.C.Cir.1995) (finding "in the interest of justice" to be a reviewable because "[c]ourts have, in other contexts, found [it] to be a reviewable standard").

In addition, the policy considerations animating the *Heckler* decision do not apply to the BIA's power to reopen deportation proceedings. *Heckler* involved an action by death row inmates challenging the Food and Drug Administration's ("FDA") failure to enforce a federal law prohibiting the use of particular drugs which the states of Oklahoma and Texas used to carry execution by lethal injection. *See* 470 U.S. at 823–24, 105 S.Ct. 1649. The Court in *Heckler* gave four reasons for its determination that the FDA's decision not to enforce federal law was unreviewable. First, it stated that a decision not to enforce a law is ill-suited to judicial review because "it involves a complicated balancing of a number of factors," including the allocation of limited resources. *See id.* at 831, 105 S.Ct. 1649. Second, the Court observed that "when an agency refuses to act it generally does not exercise its *coercive* power over an individual's liberty or property rights, and thus does not infringe upon areas that courts are often called upon to protect." *Id.* at 832, 105 S.Ct. 1649. Third, the Court stated that an agency action "provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner," whereas an agency's decision not to act does not. *Id.* Finally, the Court drew an analogy between agency decisions not to enforce and the exercise of prosecutorial discretion, which "has long been regarded as the special province of the Executive Branch." *Id.*

Here, the BIA's decision not to reopen proceedings involves inaction only in an extremely formalistic sense. By declining to reopen proceedings, the BIA is allowing the INS to deport Socop–Gonzalez and thus, is "exercising its coercive power over an individual's liberty." *Id.* Put simply, the decision not to act constitutes a decision to deport Socop–Gonzalez.

Finally, there is no steadfast rule of unreviewability in the immigration context akin to the principle of prosecutorial discretion in the regulatory context. Unless jurisdiction is withdrawn from the federal courts by statute, we have traditionally reviewed most agency decisions in immigration cases, including those committed to

---

**6.** The close resemblance of the two standards is underscored by the fact that the BIA used the phrase "exceptional circumstances" in its decision denying Socop–Gonzalez's motion to reopen.

the executive branch's discretion.[7] *See, e.g., Rodriguez–Matamoros v. INS,* 86 F.3d 158, 161 (9th Cir.1996) (reviewing Attorney General's discretionary judgment denying asylum relief); *Georgiu v. INS,* 90 F.3d 374, 376 (9th Cir.1996) (reviewing Attorney General's decision not to admit petitioner into the United States under INA § 212(c)); *Tukhowinich v. INS,* 64 F.3d 460, 463 (9th Cir.1995) (reviewing "extreme hardship" determination underlying denial of suspension of deportation); *Biggs v. INS,* 55 F.3d 1398, 1401–02 (9th Cir.1995) (same); *Ubau–Marenco v. INS,* 67 F.3d 750 (9th Cir.1995), *overruled on other grounds by Fisher v. INS,* 79 F.3d 955 (9th Cir.1996) (en banc) (reviewing motion to remand); *Rashtabadi v. INS,* 23 F.3d 1562 (9th Cir.1994) (reviewing denial of adjustment of status); *Delmundo v. INS,* 43 F.3d 436 (9th Cir.1994) (reviewing denial of waiver of excludability under INA § 212(i)); *Yepes–Prado v. INS,* 10 F.3d 1363 (9th Cir.1993) (reviewing denial of waiver of deportation under INA § 212(c)); *Lauvik v. INS,* 910 F.2d 658 (9th Cir.1990) (reviewing denial of extension of treaty investor status); *Mattis v. INS,* 774 F.2d 965 (9th Cir.1985) (reviewing discretionary denial of a motion to reopen); *Campos–Granillo v. INS,* 12 F.3d 849 (9th Cir.1993) (reviewing denial of voluntary departure).

## B

▆▆▆▆ Having concluded that we have jurisdiction to review § 3.2(a) decisions, we proceed to review the BIA's exercise of discretion in this case. When a decision is committed to the BIA's discretion, the BIA must "consider all pertinent facts," *Tukhowinich,* 64 F.3d at 463, and "must indicate how it weighed the factors involved and how it arrived at its conclusion," *Georgiu,* 90 F.3d at 375–76 (internal quotation marks and citations omitted). "The BIA abuses its discretion when it 'fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.'" *Arrozal,* 159 F.3d at 432 (quoting *Watkins v. INS,* 63 F.3d 844, 849 (9th Cir.1995)). "Mere conclusory statements are not sufficient." *Georgiu,* 90 F.3d at 375. Here, the BIA clearly abused its discretion. It simply concluded that "[t]he respondent has not demonstrated exceptional circumstances in this case." It did not consider any of the factors that are relevant to the question whether this is an exceptional situation, or indicate in any way how it arrived at its decision.

7. Some agency decisions in the immigration arena are not reviewable, *see, e.g., Mada–Luna v. Fitzpatrick,* 813 F.2d 1006, 1011 n. 4 (9th Cir.1987) (holding that court has no power to review the INS's denial of a "deferred action status" petition); *Abdelhamid v. Ilchert,* 774 F.2d 1447 (9th Cir.1985) (holding that the refusal of the United States Immigration Agency to recommend waiver of a two-year foreign residency requirement is unreviewable), but they are the exception, not the rule. *See* 8 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law and Procedure § 104.01[2] (stating that prior to the enactment of IIRIRA, there was "a right to judicial review of virtually every immigration decision. The absence of any direct authorization for judicial review of particular determinations does not preclude judicial review of particular determinations.").

Moreover, the limits on federal jurisdiction enacted under IIRIRA do not alter the fact that most decisions of the BIA are reviewable in the absence of any express authorization.

IIRIRA withdraws federal jurisdiction expressly, not by setting out provisions in "such broad terms that ... there is no law to apply." *Heckler,* 470 U.S. at 830, 105 S.Ct. 1649; *see, e.g.,* 8 U.S.C. § 1252(a)(2)(A) (limiting review of any claim arising from the inspection of aliens arriving in the United States); § 1252(a)(2)(B) (barring review of denials of discretionary relief authorized by various statutory provisions); § 1252(a)(2)(C) (barring review of final removal orders against criminal aliens); § 1252(b)(4)(D) (limiting review of asylum determinations for resident aliens); § 1252(g) (prohibiting review of Attorney General's decision or action to commence proceedings, adjudicate cases, or execute removal orders); *see also Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (refusing to interpret 8 U.S.C. § 1252(g) as "a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review'").

The BIA should have considered the following factors which, in our opinion, weigh heavily in favor of finding Socop–Gonzalez's situation to be exceptional. First, Socop–Gonzalez tried to comply with the regulations, but an INS officer misinformed him about how to proceed on two occasions. His adherence to the INS officer's advice is what caused the statute of limitations to run. In addition, Socop–Gonzalez did file an application for adjustment of status with the INS prior to the expiration of the statute of limitations on motions to reopen. Second, this is not a case where the alien has taken advantage of procedural avenues to delay his deportation. Socop–Gonzalez withdrew his appeal to the BIA, which enabled the BIA to issue a final administrative decision more quickly. Third, Socop–Gonzalez was not represented by counsel at the time that he withdrew his appeal to the BIA. Finally, Socop–Gonzalez's wife is a United States citizen, and the INS approved Socop–Gonzalez's relative visa, indicating that Socop–Gonzalez's marriage is not fraudulent. The only unfavorable factor is the INS's interest in bringing deportation proceedings to a quick conclusion but, as discussed above, Socop Gonzalez did not prolong the proceedings. While the decision to reopen proceedings sua sponte is left to the BIA's discretion, we find it difficult to imagine how this sole unfavorable factor might outweigh the plethora of factors weighing in favor of reopening Socop-Gonzalez's case.

## IV

Section 3.2(c)(2)'s statute of limitations bars Socop–Gonzalez's motion to reopen proceedings against him and the government is not estopped from enforcing the statute of limitations against Socop–Gonzalez. However, the BIA abused its discretion by failing to consider any factors relevant to the determination whether there is an exceptional situation in which it is appropriate for the BIA to reopen proceedings on its own motion. Accordingly, we remand to the BIA for further proceedings consistent with this opinion.

PETITION GRANTED. REVERSED AND REMANDED.