Anthony Apasen **MAUTING**;  Remigio Apasen Mauting, Petitioners,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 99–70088.

INS No. A28–965–302.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 2000.

Decided Aug. 15, 2001.

MEMORANDUM [2]

Anthony Apasen Mauting and his brother, Remigio Apasen Mauting ("the Mautings") seek review of a final order of the Board of Immigration Appeals ("BIA") affirming an immigration judge ("IJ") decision denying them derivative adjustment of status. We have jurisdiction under 8 U.S.C. § 1105a(a)(1) (1996).[3] Because petitioners have alleged a colorable claim of estoppel against the government, but an insufficient factual record exists for evaluating that claim, we transfer this case to a district court in accordance with 28 U.S.C. § 1631 for further consideration in the form of a habeas action.

I

Following her engagement to American citizen Allan Cecil, Simona Mauting and her three sons—who were natives and citizens of the Philippines—entered the United States on January 20, 1998, using valid "K-1" and "K-2" nonimmigrant visas pursuant to 8 U.S.C. § 1101(a)(15)(K) (1996); *see also* 8 U.S.C. § 1184(d) (1996); 8 C.F.R. § 214.2(k). Simona and Allan Cecil married on March 4, 1988, in the state of California. Anthony Mauting was 20 years old at the time of the marriage; Remigio Mauting was 17 years old.

On March 23, 1988, Simona sought adjustment of status for herself and her sons and shortly afterwards appeared for an interview before an officer of the Immigra-

Before LAY[1] and D.W. NELSON, Senior Circuit Judges, and THOMAS, Circuit Judge.

ORDER

Submission of this case was deferred to allow the parties to consider settlement. Having been advised that the parties were not able to achieve accord, the Court orders this petition for review resubmitted as of the date of the filing of this order.

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

2. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

3. Because deportation proceedings were initiated in 1991 and the BIA's final order of

deportation was entered on December 29, 1998, the transitional rules of the Illegal Immigration and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656 (1996), apply. *See Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997).

tion and Naturalization Service ("INS"). *See* 8 U.S.C. § 1255(a), (d); 8 C.F.R. § 214(k)(6)(ii). The INS denied her application on March 27, 1991, after concluding that Simona's Guamanian divorce in 1987 from her ex-husband was not valid and that her subsequent marriage to Cecil was thereby invalidated. The INS reasoned that the Guamanian divorce was not cognizable under either the laws of the Republic of Philippines or the state of California because neither Simona nor her ex-husband had traveled to Guam to obtain the divorce.

The INS also issued an order to show cause charging Simona and the Mautings deportable under 8 U.S.C. § 1255(a)(1)(A) and (B) as having stayed in the United States for a longer time than permitted and as excludable aliens without valid immigrant entry documents. After deportation hearings, an IJ concluded on April 22, 1993, that the Guamanian divorce decree and Simona's subsequent marriage to Cecil were both valid. The IJ granted Simona adjustment of status.

However, the IJ held that the Mautings did not qualify as derivative beneficiaries to their mother's adjusted status because each was over the age of 21 at the time of the decision and was not a "child" as defined in 8 U.S.C. § 1101(b)(1). Relying on 8 U.S.C. §§ 1153(d) and 1158(c), the IJ noted that the determination of the Mautings' eligibility for derivative status at the time of adjudication accorded with the "usual practice of the [INA] regarding derivative beneficiaries of immigrant visas or application for adjustment of status." The IJ declined to entertain the Mautings' claim that the INS should be estopped from deporting them because of the INS's affirmative misconduct, holding that he was without power to apply equitable estoppel against the INS.

In a summary order issued on December 29, 1998, the BIA affirmed the IJ's determination, also holding that it was "without authority to apply the doctrines of estoppel and laches" against the INS. This timely petition for review followed.

We have jurisdiction over this petition for review under the transitional rules because the decisions of the BIA and IJ were based upon an objective, factual determination of eligibility, rather than as a result of an exercise of discretion. *Bernal–Vallejo v. INS,* 195 F.3d 56, 62 (1st Cir.1999); *cf. Rashtabadi v. INS,* 23 F.3d 1562, 1568 (9th Cir.1994). We examine derivative claims for adjustment of status within the context of the strong Congressional preference for maintaining or fostering the unity of immigrant families. *See, e.g.,* S. Rep. No. 1515 at 435, 81st Cong., 2d Sess. (1950).

### III

The BIA and the IJ correctly concluded that neither had the authority to consider the Mautings' equitable estoppel claim during the administrative process. *Galo–Garcia v. INS,* 86 F.3d 916, 918 (9th Cir.1996); *Matter of Hernandez–Puente,* 20 I & N Dec. 335, 338 (BIA 1991). We may consider equitable estoppel on a petition for review from a deportation order. *INS v. Miranda,* 459 U.S. 14, 18–19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); *Socop–Gonzalez v. INS,* 208 F.3d 838, 842 (9th Cir.2000). District courts also have jurisdiction to consider equitable estoppel claims in a habeas corpus proceeding under 28 U.S.C. § 2241. *Sulit v. Schiltgen,* 213 F.3d 449, 453 (2000).

Estoppel may be applied against the INS where it engages in some "affirmative misconduct" beyond mere negligence. *Socop–Gonzalez,* 208 F.3d at 842 & n. 4. Mere delay is insufficient to constitute INS affirmative misconduct. *INS v. Miranda,* 459 U.S. 14, 18–19, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982); *Jaa v. INS,* 779

F.2d 569, 572 (9th Cir.1986). A party asserting estoppel against the government bears heavy burdens. *See, e.g., Mukherjee v. INS,* 793 F.2d 1006, 1008–09 (9th Cir. 1986). Estoppel against the government applies "only where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." *Mukherjee,* 793 F.2d at 1006. If an equitable estoppel claim is facially deficient, or cannot be sustained on the undisputed facts, we have denied relief. *See, e.g., Sulit,* 213 F.3d at 454 (no equitable estoppel from failure to inform individual of legal rights); *Socop–Gonzalez,* 208 F.3d at 843 (no evidence of a "deliberate lie" or "pattern of false promises"); *Mukherjee,* 793 F.2d at 1009 (no equitable estoppel based on misinformation).

■ However, in this case, the Mautings have alleged and preserved a colorable claim of equitable estoppel. "To be colorable in this context, the alleged violation need not be substantial, but the claim 'must have some possible validity.'" *Torres–Aguilar v. INS,* 246 F.3d 1267, 1271 (9th Cir.2001) (internal quotations omitted). The Mautings allege, with record support, that the INS deliberately delayed processing their derivative adjustment of status petition until just prior to Remigio Mauting's twenty-first birthday in order to preclude the derivative claims; that the INS recklessly and without legal or factual basis asserted that Simona Mauting's divorce was invalid, despite its knowledge to the contrary; that the INS engaged in a deliberate pattern of deception; and that, as a result, the Mautings were forever prevented from obtaining derivative adjustment of status. These claims have enough "possible validity" to constitute a colorable cause of action for equitable estoppel.

■ However, as we have noted, neither the BIA nor the IJ had jurisdiction to consider the Mautings' estoppel arguments on the merits, and we find the record insufficient for evaluation of the Mautings' estoppel claims. Thus, transfer to the district court is appropriate under 28 U.S.C. § 2347(b)(3),[4] *see Reno v. Am.–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 496–97 & n. 3, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (Ginsburg, J., concurring), and 28 U.S.C. § 1631.[5] *Cf. Fano v. O'Neill,* 806 F.2d 1262, 1265–66 (5th Cir.1987) (remand to district court when petitioner had stated a claim for equitable estoppel against INS on denial of permanent resident status caused by wilful and reckless delay in processing application). By transferring this petition, we are expressing no opinion on the ultimate merits of this case.

**PETITION TRANSFERRED.**

---

**4.** Section 2347(b)(3) authorizes a transfer when an agency has not held a hearing before taking the complained-of action, and "when a hearing is not required by law and a genuine issue of material fact is presented."

**5.** Section 1631 provides: "Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."